**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

MAR 21 2022

TAMMY H. DOWNS, CLERK
By:_____
DEP CLERK

IN THE UNITED STATES DISTRICT
COURT FOR THE EASTERN DISTRICT
OF ARKANSAS

| | |
|---|---|
| Randal Jennings ) | |
| Petitioner. ) | |
|        V ) | CASE NO: 2:22-cv-00047-JM-ERE |
| UNITED STATES OF AMERICA ) | |
| DeWayne Hendrix in his prior ) | |
| Capacity as Warden of Forrest ) | |
| City ) | |
|      Taylor as Warden of ) | |
| Forrest City ) | |
|      Poynor as AHSA ) | |
| Thomas Johnson as former ) | |
| Chaplain Supervisor ) | |

Hall as Acting Chaplain
Supervisor

This case assigned to District Judge Moody
and to Magistrate Judge Ervin

COMPLAINT FOR DECLATORY AND INJUNCTIVE
RELIEF AND PETITION FOR WRIT OF HABEAS
CORPUS IMMEDIATE RELIEF REQUESTED.

## I. INTRODUCTION

At FCI Edgefield, Barry Johnson tested positive for COVID-19 on August 16, 2020. He remained asymptomatic and was released from isolation eleven days later, having been declared "recovered by the BOP. But 19 days after his recovery, Barry couldn't walk. Edgefield sent him to the hospital, which sent him back the same day. BOP health services staff declared him "stable" on September 20. On September 23, 2020, Mr. Johnson died of COVID-19.

At FMC Lexington Tom Krebs tested positive for the virus in May 2020, spending a month in the hospital. He returned to his respected institution in mid-June, when his COVID-19 tests came back negative. He went back and forth to the hospital several

times after that for treatment of other conditions, but not of COVID-19. On September 24, 2020, Mr. Krebs died in his bed of COVID-19. The list of prioner's lives that have been lost due to COVID-19 yet continues.

In both cases, the inmates had been declared "recovered" only to die of COVID-19 days or weeks later. Deaths of "recovered" inmates with CDC risk factors is becoming a reoccurring event in the BOP, undercutting any thoughts that coronavirus is one-and-done kind of illness. It was precisely in anticipation of cases like the aforementioned Mr. Johnson and Mr. krebs that Congress modified 18 U.S.C. § 3624 (C). under Section 12003 (b)(2) of the Coronavirus Aid, Relief, and Economic Security ("CARES") Act to broaden the Federal Bureau of Prison's (BOP) discretion to allow home confinement during the COVID-19 emergency period. While BOP previously could only authorize home confinement for those who had the shorter of 6 months or 10% of their sentences left to serve, the CARES Act removed those limitations and allows the BOP to author- ize home confinement for any amount of time within its discretion

After having initially provided a list of criteria for BOP to consider when releasing prisoners into home confinement, Attorney General William Barr issued a second memo on April 3, 2020, weeks before Scott Cutting and James Lino died at FCI

2

Terminal Island, urging the BOP to immediately transfer "at-risk" prisoners to home confinement, especially at facilities where "COVID-19 is materially affecting operations." Under that criteria Mr. Cutting and Mr. Lino, both of whom were 65 or older and had existing health conditions, should have been on the shortlist for home confinement. But the BOP did not release them.

At Forrest City Sean McQuiddy passed away from Covid. As did others who were sent to the hospital and later died. SEE EXHIBITS 1, 2, 3

Since in order to file the Informal resolution process takes a lot of time, the timeframe of this pleading covers the first wave of Covid-19. And now the Omnicron wave. The tragic fact of this matter is even now when people have had shots, boosters, and recovered once, they are still dying from another strain.

Forrest City is a low-security correctional institution within the BOP that is supposed to specialize in housing prisoners who need long-term medical or mental health care. Forrest City houses some of the most vulnerable- and least dangerous people who are serving time caught in the federal prison system. The cruel irony is that many of the people currently imprisoned in Forrest City were sent there because they have serious medical conditions. They were sent to Forrest City to get access to superior medical care--but instead they are now housed in one of the worst (Hot-Spot) facilities in the BOP. Given the overwhelming number of people infected, it is impossible for Forrest City to provide proper medical treatment.

3

Forrest City was the site of one of the largest COVID-19 outbreaks in BOP, reporting over 900 positive cases as recently as May, June, and July 2020. On July 30, 2020, the number of prisoners mysteriously dropped to 3, with hundreds of prisoners now being categorized suddenly as "recovered." When in fact Forrest City stopped testing the population and falsified its numbers.

In fact right now in January of 22, Omicron outbreak is in full swing at Forrest City. RDAP unit was sick and stopped programming. Staff called in medical and 50% of the unit was COVID positive. Unfortunately, the rest of the compound was exposed when RDAP was and most inmates are sick. Yet medical refused to test more than one unit. even when inmates went to medical sick, requesting a test, they were denied.

To further complicate matters, petitioner would like to add to the record that Forrest City Low continues to demonstrate a blatant indifference for the inmates that have suffered COVID and that are vulnerable of contracting every other strain of COVID emerging. Science now shows that this will not go away. As different strains develop, the "shots and boosters" will not be effective. Petitioner has been deathly sick four times now from the constant exposure to COVID in a prison situation.

Just for a review of a previous event, in or around fall of 2018, the water in showers and bathroom areas went off for more than 8 months. Inmates were forced to take cold showers

4

even through the winter months, there was no "action plan" to accommodate the inmates or a town hall to inform inmates of what was going on. You either took a cold shower or went to another housing unit to take a shower, meaning the inmate would have to walk in the cold elements to another detached housing unit (Marianna Building) to take a warm shower, then walk back in the cold to their respective unit. it should be noted visiting unassigned housing units is strictly prohibited and enforced, so if an inmate was caught in an unassigned housing unit, he would receive an incident report and lose good-time credit days, all for keeping up with his hygiene and health.

Referring to a later time-period, on Tuesday September 15, 2020, inmates in the Wynne building were informed that they would not have hot water for 3 weeks until a part was ordered for the hot water tank. All over again, inmates are left to take cold showers, but this time now on a COVID-19 lockdown, and going to another unit to bathe is not an option. Making matters even worse, a few BOP staff has confiscated buckets. The buckets were being used by inmates to place hot water (from the hot water) dispenser)  in the kitchen area to take a warm bath. The Wynne-Charlie Counselor said that it is going to take up to 3 weeks for the part to arrive but from the inmates' experience with FCC-Forrest City staff, 3 weeks sometimes translates into 3 months or longer.

To current day January 2022, Wynne building has not had hot water for over a month. Inmates cannot do dishes or shower. Informal resolutions were written and staff stated "other areas could be used." While staff offered one time to let us shower in the Helena building. This is the very same building where 50% of the unit tested positive for Omicron.

So it is be exposed to active Covid cases and shower, or have to go without showers during a pandemic.

Petitioners continually know they are violating the Constitution but do not care. Years without a working hot water system cannot be explained. In Feb 2022 we are now locked down in Wynne building without hot water. And we get no response from staff about repairing it.

Furthermore, on information and belief Forrest City inmate dining area has continued to fail inspection, for reasons being that black mold plagues the entire area. The air quality within the facility is tremendously poor, requiring inmates and staff working in those areas to be tested/equipped with N95 respiratory masks to even work in that area. It would be safe to propose that the precise mold in the kitchen would be the equivalent to the mold in the housing units, where over 1500 inmates are lodged. Currently the kitchen is still closed and they are serving cold food. Meals that should be kept at 210 degrees to keep bacteria from forming are made hours early and served cold in styrofoam.

The Court must intervene to prevent Forrest City from

becoming the site of a national tr agedy. Respondents Michael Carvajal, the Director of the BOP, and Dewayne Hendrix and John Taylor, the Wardens of Forrest City, have demonstrated that they cannot or will not take the measures necessary to prevent the coronavirus from converting more prison sentences into death sentences without court intervention. Despite numerous warnings, and despite demands for answers and action by federal, state, and local politicians, Respondents have completely failed to provide basic supplies like soap and hand sanitizer, refusing to provide equipment (PPE) to prisoners and staff, and failing to conduct enough testing until it was too late. Respondents have refused to exercise wide discretion given to them by Congres during this national emergency to release low-risk offenders to home confinement in order to save lives. Having allowed the majority of Forrest City prisoners to contract the virus, Respondents cannot be trusted to provide those who have tested positive with proper medical treatment or to protect those who remain uninfected from infection. Even in this second wave of Omicron the BOP is not giving out masks and detergents like soap.

It is clear from public records that Respondents will not act to meet the bare minimum requirement of the Constitution unless forced to do so. While public health officials cautioned that BOP was walking into a catastrophe, BOP claimed that it was self-confident in its vigorous determinations to keep correctional employees and the prisoner population safe and healthy. The spread of COVID-19 within Forrest City's bounded space has now exploded into an actual epidemic that threatens

7

the health and safety of not only every person residing therein but also corrections officers and prison health-care workers as well as their relatives and local population.

The Warden's claims that the outbreak is under control is untrue. Those imprisoned within Forrest City have reported being crammed into communal living areas with less than 2-3 feet of space between bunks and cubicles. Sick prisoners have been released from medical care prematurely, only to collapse again and re-infect other inmates in the unit. Other prisoners who have tested positive and have symptoms have received no medical care at all--they are not being appropriately monitored and they have not even been able to speak with a doctor about how they are feeling, how bad their symptoms are likely to become, or what their treatment options are.

The ugly consequences speak for themselves. Nearly 80% of the inmate population have been infected. Packed into the confine of their shared dormitories, those imprisoned in Forrest City spend the majority of their time within arms-length of one another, whether it be while standing in pill lines, receiving meals, or even when sleeping or communicating with family on the prisons' phones and/or emails. The BOP should take immediate steps to dramatically downsize the population at Forrest City, with priority given to those at high risk of harm due to their age and health status and thus are likely to require a disproportionate amount of medical resources.

Despite the defendants' expanded power to release more prisoners under the CARES Act, they have refused to consider home confinement for the vast majority of those incarcerated at Forrest City. For many, the actions and inactions of Respondents will lead to a death sentence, especially with the upcoming flu season. This deliberate indifference amounts to cruel and unusual punishment prohibited by the Eighth Amendment. Time is running out for the individuals incarcerated at Forrest City. Everyday, those infected fear for their lives. Every day, those who are not infected see people succumbing to the illness and are forced to face the inescapable reality that it will soon come for them as well. Help is not coming from the institution or individuals entrusted with their care. Their relief can only come from the Court, and it must come before it is too late.

Accordingly, Plaintiff Pro Se, on behalf of himself, bring this action for declaratory and injunctive relief, for enlargement of custody to include home confinement and ultimately he cannot be held in custody constitutionally, for release. Petitioner has been denied a camp status And All lows are over crowded and built the Same.

9

## History of Negligence from BOP and Forrest City

1.  In or around the year 1984 Congress passed §3582(c) (1) (a), giving the BOP director the authority to present a proposal to the Courts to reduce an inmate's sentence. Since that time the

BOP has accepted less than 12 inmates annually. It was not until the First Step Act of 2018 that those numbers changed. However, in contrast to the previous point, in 1996 Senator Dick Zimmerman proposed a bill that was NEVER turned into a law that introduced a host of restrictions on inmates. Senator Zimmerman proposed tha federal inmates had too many amenities. For instance, Senator Zimmerman proposed that inmates should not be permitted to have televisions in their cells/rooms, not bearing in mind the fact that inmates were permitted to obtain televisions in their cells/ rooms, for the reason that it curved down violent actions and disagreements among inmates, amongst other suggestions presented.

The Petitioner has been incarcerated for some time now and since then they have seen their fair share of arguments and fights due to general viewing television rooms versus individual televisions. **Zimmerman's bill** despite the many times it was presented NEVER became law, however before a decision could be made concerning Zimmerman's bill the BOP adopted the text of the bill and made it BOP policy. It seems the BOP is only proactive when it is against the best benefits of the inmates  And they use

10

the excuse of Zimmerman today to deny inmates religious freedoms, even though the chapel is exempt of the instrument ban in Zimmerman.

Finally, I would like to address to B.O.P phase 7 plans to combat COVID-19 as follows:

It states, "BOP's operations are presently governed by Phase Seven of the Action Plan. The current modified operations plan requires that all inmates in every BOP Institution be secured in their assigned cells/quarters, in order to stop the spread of the disease. Only limited group gatherings is afforded, with attentio nto social distancing to the extent possible, to facilitate commissary, laundry, showers, telephone and computer access. Further, BOP has severely limited the movement of inmates and detainees among its facilities. Though there will be exceptions for medical treatments and similar exigencies, this step as well will limit the transmission of the disease. Likewise all official staff travel has been canceled, as has most staff training. All staff and inmates have been and will continue to be issued face masks and strongly encouraged to wear an appropriate face covering when in public areas when social distancing cannot be achieved.

11

That statement is factually inaccurate. Although the BOP may be able to secure inmates in their cells in Penitentiary or Medium security institutions, it is impossible to secure inmates in low and minimum security institutions. Low and minimum security inmates are housed in cubicles. Distinct from a penitentiary or a medium security institution, lows and camps have no doors  Practically all of B O.P. facilities are overcrowded so as to make social-distancing impossible.

This Statement also states, "Masks shall continue to be is used " FCC Forrest City issued masks twice in the six months that inmates have been enduring the COVID-19 lockdown. Staff members are not required to be tested for COVID outside of having their temperature read prior to entering the facility. As a person who contracted COVID-19 and a host of inmates that were tested for over 90 consecutive days, you don't necessarily run a temperature of 100.4 degrees. inmates were administered a temperature test twice a day for 90 days but once the actual swab test was administered greater than 70% of the population at FCC Forrest City contracted the deadly virus but less than 1% had a temperature of 100.4 degrees. And for a year now temperatures have not been used and testing has been stopped. Mask-issuing has also been stopped.

12

## II. JURISDICTION AND VENUE

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 2241 because Petitioners seek relief from being held in custody in violation of the Eighth Amendment to the U.S. Constitution, and pursuant to 28 U.S.C. § 1331 for relief from conditions of confinement that are in violation of the Eighth Amendment. The Court has subject-matter jurisdiction over this Petition pursuant to 28 U.S.C. § 1331 (Federal Question), 5 U.S.C. § 702 of the Administrative Procedure Act, 28 U.S.C § 2241 (Habeas Corpus), and Article I, § 9, cl. 2 of the U.S. Constitution (Suspension Clause). In addition, the Court has jurisdictio nto grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201.

Venue is proper in the District of Arkansas pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to these claims occurred and continues to occur in this district. This Court has personal jurisdictio nover Warden Taylor and Warden Hendrix because at all times relevant to this action, they have been employed at Forrest City and all the actions and omissions at issue occurred in Forrest City, Arkansas. This Court has personal jurisdiction over

13

Director Caraval because at times relevant to this action he has set poor policies and issued guidance that Respondents Hendrix, Taylor, and Yates applied at Forrest City in Forrest City, Arkansas. And this Court has jurisdiction over all the named respondents for the same reasons.

## III.    PARTIES

Plaintiff

1. Plaintiff Petitioner Randal Jennings is incarcerated at Forrest City Low. He is 55 years old and suffers from hypertension, diabetes, a BMI over 25% obese, asthma, and was diagnosed in 97 by the Kansas City Pulmonary Clinic of having COPD. Petitioner takes numerous medications for his diagnosis, including blood pressure pills, blood thinner, albuterol inhaler, metformin for diabetes. All of these issues make Petitioner more susceptible to complications resulting from Covid-19. Petitioner has been severely sick from Covid-19 and the Omicron strains at least 4 times. Even after getting the 2 shots. Petitioner was sentenced to 262 months for a violation of U.S.C. 1591. He has been incarcerated since 11/9/2009. He has been a model prisoner with no writeups, no warnings, and he has worked in Unicor for 6 years and the kitchen for the rest of the time. He has taken

14

multiple courses to better himself.

Petitioner's outdate is September 2027. He has tried to get compassionate release and was denied, and he does not get relief through the First Step Act. Since Petitioner is a sex offender, the BOP will not let him go to a camp even though he has camp points and a low risk of recidivism. So he looks to this Honorable Court to keep this from being a death sentence.

1. Respondent Hendrix, Warden, was at Forrest City during the first Covid outbreak. As Warden, Respondent Hendrix is responsible for and oversees all day-to-day functions and operations at Forrest City. His responsibilities include ensuring the safety of all in the institution and ensuring that the institution operates in an orderly fashion. Warden Hendrix was aware of and had adopted and enforced policies that left Petitioner exposed to infection, severe illness, and death due to Covid-19. Warden Hendrix declined to release people who qualified under BOP guidelines despite having the authority to do so.

2. Respondent Warden John Yates is the current Warden of Forrest City. He is in charge now during the Omicron outbreak of Covid-19. He has the same responsibilities as the

aforementioned Warden. And he too is aware and has adopted policies that leave Petitioner exposed to infection and repeated severe illness.

3. Respondent Michael Carvajal -- prior Director of the Federal Bureau of Prisons. As Director during the first Covid outbreak, Respondent Carvajal is responsible for all BOP policies implemented at Forrest City, including those pertaining to resource distribution and factors that BOP facility leadership should have considered in determining the eligibility of incarcerated individuals for early release. His responsibilities include ensuring the safety of all in the BOP system and ensuring that insitutions operate in an orderly fashion. Director Carvajal was aware of and adopted and enforced policies that left Petitioner exposed to infection, severe illness, and others to death from Covid-19.

4. Current Director BOP John Doe as Director of the Federal Bureau of Prisons. He currently has all the aforementioned responsibilities of the prior director, Carvajal,' who has stepped down. He has direct responsibility for how Covid-19 is now being handled and for the Constitutional rights that are being violated. He has adopted and enforced policies that leave Petitioner exposed to infection, severe illness, and possible death.

## IV. FACTUAL ALLEGATIONS

Respondents have been routinely denying the Constitutional rights of inmates before Covid-19. The fact of the matter is it was done time and time again in complaints filed as early as 2018. Petitioner has been denied Constitutional rights in 3 distinct areas: religious services, medical care, and the way he was treated during Covid-19. And environmental conditions he was housed in and is still subject to.

**A.    Religion**

1. Petitioner has been under substantial pressure to substantially modify his behavior and violate his beliefs.
Petitioner is a Penticostal Christian. His belief or "central tenet" is Sunday worship, Wednesday worship and worshipping God with music as in Psalms 150. Petitioner has been to two different prisons before here and both had Sunday services, Wednesday services, and electric lead guitar and amp and electric rhythm guitar and amp and an electric keyboard and amp and drums. Upon arriving at Forrest City, Petitioner noticed that Forrest City only had a piano that had not been tuned in over 14 years and old drums with duct tape holding them together.

17

At that time it was Chaplain Thomas Johnson who was the Supervising Chaplain and Chaplain Ford. Mr. Johnson's responsibilities are to supervise religious services at the Medium, Low, and the Camp. While Chaplain Ford ran the services, Petitioner started asking for instruments for his worship service in 2017. But none were purchased. He then wrote an informal resolution about instruments and the lack of chapel media room equipment, and Chaplain Johnson immediately retaliated by closing the media rooms (See Informal Resolution Exhibits)

Petitioner continued the resolution process to no avail. In fact, he wrote many requests and resolution process requests. SEE Exhibits 4-11.

Then around 2018-2020, the government admitted to a staffing shortage at Forrest City. This was in response to informal resolution requests to keep the chapel open. In the reply on 947872-AI dated 11/27/18, the government said they were short-staffed and said that was the reason the chapel was not open for services on Sunday and Chaplain Hall who was the Chaplain at the Medium refused to come to the Low so we only had services 62% of the time. (10105 95-AI)

In fact, Chaplain Hall came to Petitioner in his cube and stated that he was not going to have Sunday services ever because he had a church outside and if he had to be here instead, he would quit.

18

So for 2018 and 2019 the chapel was only open less than 50% of Sundays, our only time to worship, as before that Wednesday and evening hours had stopped. (They only opened again on Sundays after the BP process but only half the time). And Chaplain Johnson deliberately ignored requests for service instruments or for staff to open the chapel.

Staff even retaliated against Jenning s as seen in BP 962079 A1, A2 where staff took bibles from Jennings and destroyed them, and closed the media room as soon as a BP 8 was turned in. Exhibit 11.10

Then during Covid, for the whole year, the chapel was used to house inmates. No services were conducted at all. While Petitioner understands that staffing plays a major role in opening the chapel and that shortages do happen, he would point out that the same situation runs from 2017 until now.

In the present day, since reopening in 2021 after Covid, they hired another Chaplain who is also named Johnson. This Chaplain has opened the chapel for one hour on Sundays for worship and one hour for choir practice. But yet the chapel remains understaffed, because every other BOP facility has a Supervising Chaplain, 2 full-time Chaplains at the Medium and Low, and an assistant. That is 5 full-time Chaplains and a supervisor and   i
assistant at a facility this size.

19

Here they have one supervisor who also is the Chaplain at the Medium and one full-time Chaplain at the Low, and one assistant. It has been like this since 2017 with the BOP purposely not staffing to accomodate inmate religious beliefs. The Low has one Chaplain and one assistant. They need 2 Chaplains so they can open on evenings for the volunteers to run Pentecostal services. They continue to not buy any musical instruments even after multiple requests, and they have the funding to do so.

Psalm 150 states ... Praise him with the sound of the trumpet, praise Him with the lute and harp ... praise Him with the tambourine and dance. Praise Him with stringed instruments and flutes. Praise Him with loud cymbals, praise Him with crashing cymbals.
There are other verses that support Petitioner's belief also.
Yet no instruments or amps or drums have been bought in over 16 years. And the piano is out of tune and has not been fixed in years, and the PA is on its last legs. This imposes a substantial burden on Petitioner's religious exercise.

20

Petitioner addresses the religious issues under the First Amendment and RFRA Religious Freedom Restoration Act.

Music and the time for service is important in the Pentecostal religion. Petitioner had a church he went to since he was in highschool that taught music worship to God. To sing God praises and to follow Psalms 150 and other texts.

Petitioner would point to the fact that chapel funding is already there. The facility gets it every quarter, yet for years defendants have not replaced instruments at the Low.. Yet the Medium gets equipment and in fact has the same instruments Petitioner is requesting.

Petitioner requests that instruments be bought using budget money. That would fully accomodate my rights at de minimis costs to penological interests.

Petitioner would request an additional Chaplain be hired and assigned to the Low. to staff it like Beaumont or Sandstone prisons. 2 full-time chaplains at the Low and a RSA with a floating Supervisor Chaplain. Then the chapel could be open every day and evenings to accomodate all beliefs.

21

Evidence of informal resolution attempts are: Exhibits

6/5/2019 -- Throwing out bibles 962079 A1

12/15/2020 -- No services 1010595 A1 (Admits no service) STAFF.

10/13/2020 -- Only open 62% of the time 1010595 A1

11/27/2018 -- Understaffing chapel 947872 A1

11/22/2018 -- Understaffing

5/8/2020 -- NO instruments 1005818 A1

2/2/2021 -- No instruments 1005818 A2

3/2/2020 -- No instruments 1005818 F1

11/30/2017 -- Retaliated against by Chaplain Johnson for filing informal resolution 916694 A1

10/23/2020 -- Chaplain johnson said he would buy in instruments but lied and did not purchas anything
1005818 A1  Exhibits 4-11

Please note Thomas Johnson was a Supervising Chaplain not to be confused with the new CHaplain Johnson who recently started.

Petitioner asks for a fully-staffed chapel and guitars and amps, bass and amps, and keyboard and drums to be bought like at the Medium.

22

## B.    MEDICAL

Staff held a meeting telling us that Covid was in the area and that new rules were in place, that all incoming inmates would be tested and quarantined in the SHU. The very next day a bus arrived at Forrest City carrying inmates to both the Medium and the Low. Among them were inmates Stormy and Sterns. They were taken to the SHU but were released to general population the very next day. See BP Exhibit 1033051 4/15/2020 Exhibits 22, 23, 44 45 A few days later Covid-19 cases started popping up in the units they were placed into. The facility did a lockdown. But COvid-19 spread. Part of the problem was that staff did not enforce the lockdown. Petitioner was in Wynne Charlie unit and everyone was tested and found negative. Next door in Wynne Delta unit everyone tested positive. There is a hallway between the units with 2 doors in it. Those doors should have stayed locked. Yet staff would intentionally let positive inmates come into our unit to get hot water from the cup hot water and ice. Petitioner complained to the COs and to Mr. hoist. Petitioner then wrote an informal resolution that was replied to with "Staff would again be instructed to keep doors locked." But never laced them    See exhibits 19, 20

23

But it turned out to be too late. An inmate in WC got sick and everyone was tested. 7 inmates were positive for Covid-19, including Petitioner.

Petitioner was then told to pack all his property and put it on a cart and push it to VoTech, which was a woodshop.

Once there, he was told that they would have to clean the wood shavings and dust up and sleep on cots there with the woodworking machines. After 2 weeks Petitioner and the 6 others were told to pack up and go back to WC. By that point the whole unit had tested positive. But as soon as he got upstairs, he and inmate Brian Sterns were told to repack and go back to VoTech. (Petitioner and Sterns were symptomatic and sick from Covid-19). He remained there in "medical isolation" for about 30 days in VoTech. Then everyone in VoTech was tested and Petitioner was told to pack again, thinking he was negative and was going back to a unit.

5 inmates, including Petitioner and Sterns were taken to an area behind medical where there were 3 2-man cells. Petitioner was told to only take out what was needed for one day and to go into a 2-man cell that had a temporary cot so 3 men had to go in it. Petitioner had forgotten to get his asthma and blood pressure pills and diabetes meds. When he told Mr. Poynor he needed them, Poynor just said, "Get in the cell." Once entering the cell,

24

Petitioner noticed that everything was wet and there were a lot of spiders, some of which were dying.  He asked for a towel to shower with and another one to dry the poison off the beds with and was told no. Petitioner asked for a cup for water and a bible and was told no. But everything--meds, cup, towel, bible--was 2 feet away on a cart outside the door. Exhibits 24.-43 Petitioner asked the nurse that wandered by--Nurse Phillips--who told me that we would be in there about one week, and that the VoTech building was housing negative inmates who got tested, and they would be moved out of there when the test results came back. Petitioner explained that he could not go without heart and asthma medications. She said they ordered some. One medication came the next day but the other medication took 4 days. Nothing made sense as to why they would house negative inmates in an area. Positive ones just left that area without disinfecting it. Petitioner also wonders why they would not give Petitioner his prescribed medications that were 2 feet away from the door, instead making him wait days for the needed medications to be refilled, and why they made him sleep on a mattress wet with bug poison on it.

Petitioner asked to speak to a LT but was repeatedly ignored. Psychiatry showed up when they were requested by Petitioner but Petitioner was told there was nothing that department could do.

Mr. Poynor, who was the Assistant Supervisor of Health Services, was intentionally and deliberately inflicting emotional duress, causing cruel and unusual punishment. This is documented in multiple informal resolutions. Poynor not only knew he was harming Petitioner, he intentionally denied him prescribed medication, made him sleep on poison/disin- fectant and refused him a towel or soap to shower with And after 3 days of asking for medications, Mr. Poynor turned around and dropped heavy boxes on Petitioner's property--still on the cart 2 feet from the door-- to damage it. Meanwhile this whole time Petitioner was being bitten by spiders infesting the cells. He even showed them to staff. Mr. Poynor failed to carry out medical orders by not giving Petitioner medications for diabetes, high blood pressure, and asthma.

He failed to remedy unlawful conditions he knew about and even created.

Mr. Poynor was deliberately indifferent to Petitioner's serious medical needs. And he knew there were needs, and had actual knowledge that there were deficiencies in the medical care system that created a risk of harm that happened to the Petitioner.

He deliberately interfered with treatment once prescribed

Many cases show deliberate indifference: Edwards v Snyder 478 F.3d 827, 832 (7thCir2007), holding an allegatio nof a 2 day delay in treatment of an injury stated deliberate indifference regardless of adequate treatment later given

See Estelle v Gamble, 429 US 97, 105 975CT 285 (1976)

In Johnson v Doughty, 433 F.3d 1001, 1013 (7thCirc2007), a medical professional's erroneous treatment decision can lead to deliberate indifference, or liability if the decisio nwas made in the absence of professional judgment.

Hanes v Snyder, 546 F.3d 516 524-26 (7thCir2008): holding doctor's actions and testimony could support an inference that he was hostile and dismissive to Plaintiff's needs and therefore deliberately indifferent.

Collignon v Milwaukee County 163 F.3d 982, 989 (7thCirc1998): A plaintiff can show that the professional disregarded the need...if the professional's subjective response was so inadequate that it demonstrated an absence of professional judgment, that is, that no minimally competent professional would have so responded under those circumstances.

27

Petitioner believes that all the cases apply to Mr. Poynor's actins of denying medications, soap, towels, bible, shower shoes to him when they were two feet away on a cot that had his personal property.

In Hughes v Joliet Correctional Center, 931 F.2d 425 428 (7thCir1991), it found evidence that medical staff treated Plaintiff "not as a patient, but as a nuisance...found deliberate indifference."

After the week stay in segregation behind medical, Petitioner was moved with the other 4 back to the VoTech wood shop. He was still sick and testing positive.

Petitioner was given cleaning jobs to clean the woodshop, and to mop and sweep for no pay. One day he was told by Mrs. Ping, Acting Assisstant Warden, to fold up cots that were not being used. While Petitioner and inmate Sterns folded a cot, Petitioner's pinky finger (left) was caught in the frame and cut severely. Exibir 46 He was sent to medical where the nurse gave him a tetanus shot, glued his finger, and bandaged it. But even after the skin healed, it was still painful to the touch. He asked Dr. Obi during a chronic care visit to look at it. She said it would need an X-ray and was told by the PA there was nothing more that could be done. It would be like that forever. the nerves were damaged.

28

Petitioner stayed in medical isolation for 63 days until the BOP stopped testing inmates. Then he was returned to his unit.

During the whole 63 days Petitioner was in isolation, his unit was all Covid-19 positive. Other positive inmates did not move and were allowed to remain in the housing unit, not having to move at all. At least 1400 other inmates.

At present during the Omicron outbreak, medical has not tested, even inmates going and asking for a Covid-19 test. The only ones tested were an RDAP unit because the staff requested it and 50% of the unit was positive. And inmates were leaving from there to halfway houses. Medical is not testing anyone if they don't have to, even if someone goes to medical saying they're sick. Just today an inmate from Petitioner's unit was scheduled to go home. At R&D, they gave him a quick Covid-19 test because the halfway house requested it and he tested positive and was put into quarantine. Y et not even his bunkee who shares a 6' area with him was tested.

## Mass Punishment

### Intentional Denial of Due Process Rights.

Respondants routinely deny due process rights to inmates. This happens about once a month. B ut they usually do it in a way that never gets reported, or they intentionally delay the informal resolution process in hopes inmates will give up and forget about it.

One example was when a mass shakedown was conducted. Petitioner had nothing wrong in his cell yet they mixed bedding with his bunkee's, threw out personal property without writing confiscatio nslips, smashed open bags of chips, then let a trash crew of inmates come in and take items from the unsecured lockers. this was written up in informal resolutions, BPs 8, 9, and 10, but Smith intentionally delayed the writeups from 8/31/21 and then in December returned them with a note saying she could not enter them because it was too late. See Exhibit 13

The Building Manager issued sanctions to everyone because hooch was found in another unit.  This denied Petitioner communication to his family as is MASS PUNISHMENT, banned by the Constitution. This is clearly proven by a memo in Exhibit 14, 17,21 Please note the word Sanction is used. By punishing others because it's "easier" to punish everyone instead of figuring out who made alcohol, they chose to intentionally deny our due process rights with no charge, DHO hearing, or any way to defend ourselves.

See BPs dated 8/3/21, 8/3/21, 10/26/21, 10/15/21, 11/10/21, 11/12/21.

The Petitioners Forrest City institution has been in a perpetual lockdown and prisoners have been fed spoiled food, denied hot water for showers, placed in black mold-infested dormitories. Petitioners have also raised concerns about the living conditions following the proper chain of command (prison staff)--including the Warden, all to no avail. The Petitioner himself has also submitted applications for Compassionate Release and/or Home Confinement but was denied. Respondents have even intentionally delayed and lost informal resolutions to deny access to this court. See Exhibit 13 15,16 18.

## A. The COVID-19 Emergency

In the first round of Covid-19, Forrest City-Low has been identified as the epicenter of the pandemic in Arkansas, with over 900 cases. The virus is known to spread from person to person through respiratory droplets, close personal contact, and fr om contact with contaminated surfaces and objects. Infected people can spread the virus to others even if they are asymptomatic, so that simply avoiding people who are coughing or visibly feverish is insufficient. According to the CDC, people who suffer from certain underlying medical conditions face elevated risk. Such conditions include chronic lung disease, moderate-to-severe asthma, serious heart conditions, hypertension, high blood pressure, chronic

31

kidney disease, liver disease, diabetes, compromised immune system (from cancer treatment, HIV, autoimmune disease, or use of immunosuppressing medication for other conditions), and severe obesity. One analysis found mortality rates of 13.2% for patients with cardiovascular disease, 9.2% for diabetes, 8.4% for hypertension, 8.0% for chronic respiratory disease, and 7.6% for cancer. But such percentages have fluctuated higher, due to recent discoveries by researchers. the risk of illness or death from Covid-19 is increased for older populations. In many people, Covid-19 causes fever, coughing, and shortness of breath, also damaging vascular tissues and veins over a period of time after contracting such diseases, leading to serious medical conditions or death. People of all ages or with medical conditions increase the risk of serious Covid-19 infection. Most people in higher-risk categories who develop serious illness will need advanced support. This level of supportive care requires highly-specialized equipment that is limited in supply and an entire team of care providers, including 1:1 or 1:2 nurse-to-patient ratios, respiratory therapists, and intensive care physicians. In patients who do not die, covid-19 can severely damage lung tissue, requiring an extensive period of rehabilitation, and in some cases, can cause permanent loss of respiratory capacity. covid-19 may also target the heart muscle, causing a condition known as myocarditis, or inflammation of the heart muscle. Myocarditis can

32

affect the heart muscle and electrical system, reducing the heart's ability to pump. ʰThis reduction can lead to rapid or abnormal heart rhythms in the short term, and long-term heart failure that limits exercise tolerance and the ability to work. emerging evidence also suggests that Covid-19 can trigger an over-response of the immune system, further damaging tissues in a cytokine release syndrome that can result in widespread damage to other organs, including permanent injury to the kidneys and neurological injury. These complications can manifest at an alarming pace. Patients can show the first symptoms of infection in as little as two days after exposure, and their condition can seriously deteriorate in as little as five days. although many people who contract Covid-19 will exhibit relatively mild symptoms, the virus will manifest in some 20% of cases as more severe, requiring "significant medical intervention." Even with two shots and the booster shot, Omicron can still get people sick and kill others. Social distancing or remaining physically separated from known or potentially infected individuals, and vigilant hygiene, including frequent and thorough hand-washing with soap and cleaning and disinfecting high-touch surfaces are the only known

effective measures for protecting people from Covid-19. this is especially significant being that the virus can spread through people who appear asymptomatic. Yet Forrest City is not giving out cleaning supplies, or even hot water. And with 1540 inmates distancing is impossible,

**B. Imprisoned People and Staff are Predominantly Susceptible.**

People in an environment with confined space such as correctional facilities where people live, eat, and sleep in close proximity, face increased danger of contracting Covid-19, as already evidenced by the rapid spread of the virus in cruise ships, sporting events, places of employment, and nursing homes. such close quarters and limited freedom of movement inherent in correctional facilities make social distancing and other preventative measures difficult or impossible. Moreover, the ability of incarcerated people to adopt preventative measures is completely subject to the dictates of correctional officers who control the housing, schedules, sanitary supplies, and nearly every other aspect of their lives. Correctional facilities increase the risk of rapid spread of an infectious disease like Covid-19 because of the high number of people with chronic, often untreated illnesses housed in a setting with minimal levels of sanitation, limited access to personal hygiene, limited access to medical care, and no possibility of staying at a distance from others. SEE exhibit _____

35

The CDC has issued guidance urging prison administrators to take action to prevent overcrowding of correctional and detention facilities during a community outbreak. The CDC guidance emphasizes that social distancing is "a cor_nerstone of reducing transmission of respiratory disease such as Covid-19." It calls not only for social distancing, but also measures for isolating and quarantining detainees and staff who have (or are suspected of having) Covid-19 from those who do not have (or presumably do not have) the virus. Many correctional facilities find implementation of these preventative strategies challenging without a significant reduction in prison populations. As a general matter, correctional facilities frequently lack sufficient medical supplies for the population and, in times of crisis, medical staff may cease coming to the facilities. Hot water, soap and paper towels are often in limited supply. Forrest City inmates in Wynne Charlie where the Petitioners are housed do not have access to hot water. Inmates themselves, rather than professional cleaners, are often responsible for cleaning the facilities and often are not given appropriate supplies. This means there are more people who are susceptible to infection all congregated together in a location where fighting the spread of an infection is nearly impossible.

For reasons, correctional public health experts have recommended the release from custody of people most vulnerable to Covid-19 from transmission of the virus, and it allows greater risk mitigation for all people held or working in a prison, jail, or detention center. Release of the most vulnerable people from custody also reduces the burden of the region's health-care infrastructure by reducing the likelihood that an overwhelming number of people will become seriously ill from Covid-19 at the same time. "BOP should take immediate steps to dramatically downsize the population at Forrest City with priority given to those at high risk of harm due to their age and health status and thus are likely to require a disproportionate amount of medical resources." Had Respondents similarly reduced the population at Forrest City, as called for by the science, the catastrophe we are faced with today may have been avoided. Because they did not the outbreak at Forrest City is now out of control. This not only poses an unacceptable risk to the health and safety of the incarcerated but also burdens local hospitals and thus endangers the broader community. And with the fact that there is no end in sight of stopping the virus, it is just a matter of time until the death toll is staggering from a mutated virus.

37

There is no doubt that Forrest City correctional facilities lack adequate medical facilities to treat serious Covid-19 cases, so an outbreak in prison could overwhelm local hospitals. This facility lacks adequate medical facilities to treat serious Covid-19 cases. And as correctional staff enter and leave the facility, they will carry the virus with them. Like the incarcerated in the facilities where they work, the correctional officers face an increased risk of Covid-19 exposure because they are less able to engage in social distancing and because of the shortage of PPE. When the dangers of Covid-19 have reached a level where the prison is no longer able to incarcerate its population in constitutional conditions, courts have also granted emergency habeas relief for entire classes of prisoners to be evaluated for enlargement of custody on an accelerated basis.

**C. Due to Forrest City-Low's unique vulnerability to Covid-19, it is not capable of treating those infected or stopping the spread without reducing the population.**

Forrest City's outbreak is considered a hotspot within Federal prisons. The remarkable size and speed of the Forrest City outbreak is due to the vulnerability caused by a unique combinatio nof three separate, aggravating factors: overcrowding, communal living spaces, and the vulnerability of the inmate population.

First, Forrest City is severely overcrowded: as of September 10, 2020, approximately 1500 inmates occupy a prison with a rated capacity of 1100. This amounts to an overcrowding rate of 133%, higher than the average federal overcrowding rate of 124%. Even under otherwise ideal conditions, this fact that the prison is already over capacity would render social distancing--a practice that inherently requires that facilities operate at far under their usual capacity--extremely difficult if not impossible. Prisons are by nature fertile ground for the spread of Covid-19, overcrowded prisons even more so.

In an attempt to mitigate the overcrowding issue, Forrest City-Low has reportedly moved prisoners to hastily erected tents that developed mold and were not used. Then Forrest City converted "rodent-infested, leaky"

39

vocational warehouse into a living space. Even with these emergency measures, Forrest City has failed to ensure the adequate social distancing or isolation of infected inmates. To the contrary, the exposure of prisoners to makeshift, unsanitary living spaces merely creates new hot zones for the virus to spread at an even more rapid rate.

Second, Forrest City is a low-security prison, which houses some of the least dangerous people in the custody of the federal B.O.P. system. As a result, virtually all of the prisoners at Forrest City are house in dormitory-style settings with communal areas where social distancing is impossible. A typical open-dormitory-style housing arrangement, with men cramped in a single room, bereft of any barriers to provide any semblance of privacy or create space from others. Prisoners sleep in long rows of opened double-man cubicles. aware of the need to prevent the spread of Covid-19, prisoners have tried to take matters into their own hands by cleaning dormitories, but are limited to watered-down disinfectant, dirty mops, faulty sinks, empty soap dispensers, and used rags cut from their blankets.

40

Third, FCI Forrest City is designated a Care Level 2 medical facility, designed to "provid[e] specialized or long-term medical or mental health care in a correctional environment." According to BOP guidelines on Care Level classification, "Care Level 2 inmates are outpatients who have complex, usually chronic medical or mental health conditions and who require frequent clinical contacts to maintain control or stability of their condition." Many prisoners with underlying conditions, including diabetes,, blood pressure, heart, lung, kidney, and liver disease, default to Care Level 2. This includes many Petitioners who have been diagnosed with hypertension, asthma, medication for high cholesterol, or even those who are pre-diabetic.

These people are prevalent at FCI Forrest City precisely because they are the sort of people who are most at risk to Covid-19. Thus, the treatment load created by hundreds of infected prisoners at Forrest City is and has been far greater than it would be at an average prison, as more of the infected will require hospitalization and intensive care. This strain on medical resources, in turn, may increase the mortality rate of prisoners infected with Covid-19.

41

Combined with the extraordinarily high infection rate, a high mortality rate would create an exponential threat to the health and safety of Forrest City prisoners.

In the face of a Covid-19 outbreak, Forrest City-Low has the worst of all worlds: it is overcrowded enough to make effective social distancing and isolation almost impossible, an open and communal living space for inmates to frequently interact in close quarters to spread the disease, while also hosting a uniquely vulnerable inmate population.

**D. The indifference of BOP and Respondents has allowed Covid-19 to spread like wildfire and is putting inmates at Unconstitutional risk daily.**

As discussed supra, FCI Forrest City has failed to effectively distance or quarantine inmates, and their attempts to do so have merely exposed prisoners to further danger. FCI Forrest City's preventative failure can be divided into four categories: failure to adequately social distance; failure to provide adequate PPE; failure to adequately test and trace infected persons; and failure to provide constitutionally adequate medical care. Collectively, these failures have led to a devastating number of positive cases and the resulting serious harm and/or death caused in part by an overburdened medical care system. With Omicron, the BOP has chosen to ignore it and hope that nobody dies.

43

**1. FCI Forrest City has failed to take measures to create adequate social distancing.**

As discussed supra, FCI Forrest City's communal living spaces make social distancing difficult, if not imposs- ible, without a significant reduction in population. The prison's solution has been to reduce the population density in communal areas by setting up temporary living spaces: departments such as Religious Services, Education, and one converted woodshop, commonly referred to as "Vo-Tech" have all been converted to temporary, inadequate living spaces.

These temporary spaces have not created adequate social distancing or reduced the population at FCI Forrest City even to its rated capacity, much less the substantially reduced capacity needed for social distancing. Even worse, the deplorable sanitary conditions in the temporary spaces have simply resulted in trading one hot zone of infection for another. According to Petitioners, many of the temporary spaces are considered so unsanitary, they are "simply not fit for human habitation." These temporary spaces are infested with a veritable menagerie of animals: mice, flies, and other insects and pests come through holes in the ceiling. Prisoners sleep on fold-out lawn beds that are only three feet from the floor and many of these temporary spaces have no drinking water, no running hot water, and no heating--leaving the

44

Petitioners to shiver through the night in uncomfortable sleeplessness. Up to 60 prisoners have to share 2 toilets, 2 sinks, and 2 showers. One could hardly imagine more ideal conditions for a dangerous communicable disease to spread.

**2. FCI Forrest City failed to implement even the most basic preventative measures.**

Inmates were not provided masks until late April, when, in all likelihood, Covid-19 had already gained an insurmountable foothold among the population. But even that late attempt was even more deficient than it seemed at the time, as FCI Forrest City promised to distribute new masks once a week, which quickly slipped to none being issued. As such, prisoners have since been forced to re-use masks for extended periods. The shortage of masks is not a problem limited to prisoners: even the nurses at FCI Forrest City regularly copmlain about the shortage of masks and other protective equipment. Even with the Omicron outbreak, masks are not being given out.

Even aside from masks, officials have failed to take other simple steps that could be beneficial, such as providing hand antiseptic comprising of alcohol, hand soap, disinfectants for frequently-touched surfaces, and clean clothes. Such measures, while less important than fresh cloth masks, are still suggested by the CDC as effective in preventing the spread of Covid-19.

**3. Forrest City has failed to adequately test, trace, and isolate persons infected with Covid-19.**

The World Health Organization (WHO) has called isolation, testing, and tracing "the backbone of the response" to coronavirus, and specifically identified these methods as critical to the success of countries such as South Korea. In order to slow the spread within high risk populations, large numbers of individuals must be tested, those who are positive for Covid-19 must have their contacts traced to identify additional individuals who may be infected, and all must be isolated for a period of time. These practices would be extremely difficult to implement even in an ideal condition. At Forrest City, a failed policy has already rendered conditions far from ideal.

Upon information and belief, for weeks after its first positive cases, Forrest City maintained a policy of testing only symptomatic inmates, despite the fact that Covid-19 can be transmitted by asymptomatic or pre-symptomatic individuals. Forrest City only began to test its entire prisoner population on or around April or May of 2020, when over half of its population had already been confirmed as infected. Also, upon information and belief, aside f rom that one-time test of the entire population, Forrest City is even now not regularly testing prisoners who may have been exposed

47

to infected persons, nor is it testing "recovered" Covid-19 patients before they are categorized as such and returned to the general population. With Omicron, they are choosing to pretend Covid is not here. There is no testing or masks being issued.

As discussed in the previous sections, Forrest City has made virtually no effort to legitimately reduce prisoner poplation. Instead, officials have resorted to cohort-style isolation, seemingly under the facade that all inmates in a given group are either positive or negative for Covid-19, having been recovered in record-breaking time (better than the world). For example, (after the aforementioned period in the VoTech warehouse) every prisoner is purpotedly negative for Covid-19. If a prisoner is determined to have contracted the disease, he is removed from the unit; however, there are no other measures taken to assess whether other prisoners have been infected through close contact with that individual. With Omicron they are not testing and ignoring the fact that everyone is sick.

This situation exposes the fundamental problem with such large-group separatio ntactics in the face of a highly contagious disease, made all the worse given the facility's failure to implement repeat testing. And much of this segregation occurred before the facility-wide

testing. The one time that prisoners received fairly certain indication as to whether or not they have contracted Covid-19. Respondents were supposed to quarantine busses arriving for 14 days. But they had a bus arrive and only kept them at the SHU for one day (24 hours). Then they released them into the general population and all of them were Covid positive. Three from the same bus went to the medium and they were positive. This started the outbreak at Forrest City.

Finally, on information and belief, inmates have been deprived of medical care for their underlying conditions ever since Covid-19 began spreading like wildfire. In any prison, this would be deeply troubling. But for Forrest City, as discussed supra, it is a level 2 care facility. In short, it is a facility designated by the BOP specifically to house prisoners with chronic medical conditions. In other words, many of these inmates are in need of regular medical attention, which they have been deprived of while simultaneously being subjected to great danger. And their underlying conditions likewise make them more likely to suffer severe complications should they contract Covid-19 a second time

Even in the face of this intensifying public health catastrophe, Forrest City has refused to earnestly consider the obvious solution for stopping the spread and reducing the burden on its medical personnel: reducing the inmate population. Forrest City has

49

refused to exercise the authority it has to release the people at high risk from infection, which would protect both those individuals and the others, who would remain at a less-crowded facility where effective social distancing and isolation and access to medical care might be possible.

Despite the please, Forrest City continues its normal operations, refusing to change the way they handle day-to-day operations, none of which include the reduction of its population. To make matters even worse, Forrest City staff routinely work the prison one shift, only to then work overtime at the hospital detail without utilizing PPE, where an inmate(s) has been exposed to Covid-19 and requires outside medical help. And then the next day they are back to work at the prison, without any quarantining.

## V. LEGAL GROUNDS FOR PETITION

**A. Respondents' Failure to Take Steps to Mitigate Transmission of COVID-19 Constitutes Deliberate Indifference to the Serious Medical Needs of Petitioners.**

Respondents are violating Petitioners' Eighth Amendment rights by continuing  to incarcerate them in conditions that place them at substantial risk of serious harm from transmission of an infectious and deadly disease, especially considering Petitioners' vulnerable conditions. All individuals at Forrest City have been convicted and assigned by the BOP to serve time at Forrest City. Therefore, the treatment of all individuals incarcerated at Forrest City, including the Petitioners, is governed by the Eighth Amendment.

Government officials act with deliberate indifference when they "ignore a condition of confinement that is sure or very likely to cause serious illness and needless suffering the next week or month or year," even when "the complaining inmate shows no serious current symptoms." This Court need not "await a tragic event" to find that Respondents are maintaining an unconstitutional condition of confinement.

51

This is so not only because a tragedy is ongoing, but because even petitioners and class members who have not yet tested positive have a constitutional right to be free from conditions of confinement that "pose an unreasonable risk of serious damage to [Petitioners'] future health." Indeed, the threat of exposure to a deadly infectious disease such as COVID-19 and subsequent mistreatment due to a lack of resources constitutes a serious risk to health, particularly for the petitioners because of their unique vulnerability to Covid-19.

As such, Petitioners are entitled to be protected from conditions of confinement that create a serious risk to health or safety, including through release from custody when necessary. under Forrest City's current conditions, Respondents have not and cannot protect petitioner from this well-known risk of serious harm. In these circumstances, enlargement of custody and, if necessary, release is required to protect Petitioners with high-risk health conditions from unconstitutional custody. In this case, as established by the facts above, Petitioner faces a significant risk of exposure to Covid-19, with the attendant risk of death that follows given his vulnerable conditions. Respondents are well aware of this risk, having

been alerted to it by the CDC, the Attorney General, BOP guidance, widespread news outlets, and the ongoing outbreak at various BOP facilities, including Forrest City itself.

Finally, as established above, Respondents have not taken sufficient steps to protect Petitioners from the grave risks that are present every moment he is incarcerated at Forrest City. Respondent Hendrix, Taylor, Yates have recklessly failed to follow or implement CDC guidance or directives from Attorney General Barr or the BOP. Respondents are not capable of managing the risk to Petitioners in the facility's current environment. Respondents are holding Petitioner in violation of his Eighth Amendment Rights by detaining him in the face of significant threats to his health and safety without taking reasonable steps to prevent or address that harm.

B. Overcrowding Ensures that Respondents Cannot Implement Recommended Measures Required to Protect Petitioner's Health, and Violates the Eighth Amendment.

Respondents are violating petitioner's Eighth Amendment rights by continuing to incarcerate him in conditions that place him in substantial risk of serious harm from transmission and potential re-transmission of an infectious and deadly disease. As alleged above, the BOP thus far failed to implement effective social distancing across its facilities, including and particularly at Forrest City with disastrous effects. Part of this failure reflects the nature of correctional confinement; however, a large part here owes to the particular circumstances of Forrest City's design, capacity, and deliberate choices about policies by Respondents.

Respondents have chosen to overcrowd Forrest City in the midst of a global pandemic at a rate of approximately 120% capacity. The profound and purposeful overcrowing at Forrest City ensures that effective social distancing is impossible, and it stalemates Respondents' ability to follow and implement the CDC guidances and other viral-transmission prevention measures. Courts have long found that facilities population may exacerbate harms entirely

unrelated to the fact of crowding itself, including cases where overcrowding may inhibit a facility's ability to mitigate incarcerated individuals' risk of contracting dangerous diseases. The Supreme Court itself has acknowledged that correctional defendants such as Respondents can encroach upon the Eighth Amendment when they pack prisoners into shared spaces with others who have "communicable diseases."

Such decisions make particular sense in light of substantial corroborating evidence that transmission becomes more likely in light of, among other factors, the relative crowding of people together.

In the instant case, Petitioners face an elevated risk of serious illness both because of particular failures on the part of Respondents as alleged above, and becau se Respondents have chosen to overcrowd the facility. the current population of Forrest City, both the incarcerated individuals and the staff who come through on a daily basis and work in the same confined spaces, ensures that any effective measures that would mitigate Petitioners' exposure to and risk of serious illness from Covid-19 are impossible to implement. Respondant has also denied petitioner to go to a camp where there are a lot less inmates, or home confinement.

VI. CLASS ACTION ALLEGATIONS

VI. CLAIMS FOR RELIEF

(Eighth Amendment)

Unconsitutional Conditions of Confinement in

Violation of the Eighth Amendment of the U.S. Consitution

28 U.S.C. § 2241/28 U.S.C. § 2243

Class versus All Defendants

Petitioner incorporated by reference each and every alleg-
ation contained in the preceding paragraphs as if set forth
fully herein. Petitioner brings this claim on his own behalf.

The Eighth Amendment guarantees sentenced prisoners custody
free of "a condition of confinement that is sure or very
likely to cause serious illness and needless suffering the
next week or month or year." The government's failure to
protect the prisoners in its custody from a widespread
outbreak of a serious contagious disease that causes
potentially permanent damage or death constitutes a deliberate
indifference in violation of the Eighth Amendment to the
United States Constitution. Petitioner             is, at
severe risk of contracting Covid-19 yet again because over
80% of inmates have already tested positive and a few
individuals have already shown symptoms of contracting the
virus a second time. Petitioners and many members of the
Class are uniquely vulnerable to serious medical complica-
tions or death from contracting Covid-19 because of their
age and/or because they suffer from medical conditions that

**56**

render them uniquely vulnerable. Omicron proves the risk is still continuing as many have contracted Omicron after getting vaccinated.

Because of the conditions at Forrest City, Petitioner cannot take steps to protect himself--steps such as social distancing, handwashing hygiene, bathing hygiene, or self-quarantining--and the government has not provided adequate protections. As Covid-19 rapidly spreads inside Forrest City, the already deplorable conditions at the prison will continue to deteriorate, and incarcerated individuals there will continue to suffer from unhumane conditions causing them to easily contract Covid-19 at staggering rates. Due to inadequate medical care at Forrest City and the health/safety of those who contract Covid-19 will be put in unconstitutional danger.

Petitioner contend that the fact of their confinement in prison itself amounts to an Eighth Amendment violation under the aforementioned circumstances, and nothing short of an order ending his confinement will alleviate that violation Respondendts' failure to adequately protect Petitioner from these unconstitutional conditions, or release them from the conditions altogether, constitutes deliberate indifference to a substantial risk of serious harm to Petitioner, thereby

57

establishing a violation of the Eighth Amendment to the United States Constitution. Respondents were aware of should have been aware of these conditions, which were and are open and obvious throughout the entire prison. Respondents also knew of and disregarded an excessive risk to health and safety. Respondents failed to act with reasonable care to mitigate these risks, subjecting the Petitioner to a grave and serious risk of harm of serious illness, permanent injury, or death.

Because Respondents failed to act to remedy Petitioner's degrading and inhumane conditions of confinement in violation of the Eighth Amendment rights, Petitioner seeks relief under this Writ of Habeas Corpus Petitioners ; i

Because of the unlawful conduct of Respondents, Petitioner is threatened with imminent physical injury, pain and suffering, emotional distress, humiliation, and death.

58

## SECOND CLAIM FOR RELIEF

### (Eighth Amendment)

Unconstitutional Conditions of Confinement in

Violation of the Eighth Amendment to the

U.S. Constitution

U.S. Const. Amend. VIII; 28 U.S.C. § 1331;

5 U.S.C. § 702

Petitioners incorporate by reference each and every allegation contained in the paragraphs above as if set fully forth herein. Petitioner brings this claim on his own behalf. This claim does not seek the release of Petitioner and accordingly is not maintained pursuant to 28 U.S.C. § 2241. However, it is well established that individuals may sue to enjoin constitutional violations, either directly under the Constitution or under the Administrative Procedures Act. Petitioner also would submit some claims might fall under toRT or Bivens.

Because of the conditions at Forrest City, Petitioner cannot take steps to protect himself--such as social distancing, hand-washing/bathing hygiene, or self-quarantining--and the government has not provided adequate protections. As Covid-19 rapidly spreads inside Forrest City, the already deplorable conditions at the prison will continue to deteriorate, and incarcerated individuals there will continue to contract Covid-19 at staggering rates, while administrators at Forrest City will control the

numbers to create a smokescreen that its insitution is under control. That is exactly how everyone is sick with Omicron, yet because of the lack of testing, the numbers reported are low.

Respondents failure to adequately protect Petitioner from these unconstitutional conditions, or release him from the conditions altogether, constitutes deliberate indifference to a substantial risk of serious harm to Petitioner, thereby establishing a violation of the Eighth Amendment of the United States Constitution. Because of the unlawful conduct of Respondents, Petitioner is threatened with imminent physical injury, pain and suffering, emotional distress, humiliation, and death.

## RELIEF REQUESTED

WHEREFORE, Petitioner respectfully requests that the Court:

1. Declare that Forrest City's custody of Petitioner violates the Eighth Amendment right against cruel and unusual punishment with respect to Petitioner.

2. Order a highly-expedited process--for completion within no more than 48 hours--for Respondents to use procedures available under the law to review Petitioner for enlargement of custody to home confine- ment (or bail pending habeas corpus) in order to reduce the density of the prison population to a number that allows for the implementation of appropriate measures to prevent the spread of Covid-19, during the pendency of this petition for a writ of habeas corpus;

3. Order Respondents to comply with the Constitution if this Petitioner does not receive temporary enlargement and remains at Forrest City during the pendency of the petition;

4. Grant a writ of habeas corpus for Petitioner upon receiving temporary enlargement within one day of the Court's order and release Petitioner within 24 hours;

5.  Enter a temporary restraining order, preliminary injunction and permanent injunction requiring Respondents to immediately adopt mitigation efforts to protect Petitioner, including but not limited to:

   A.  Providing adeequate spacing of six feet or more between incarcerated people so that social distancing can be accomplished in accordance with CDC guidelines;

   B.,  Ensuring that each incarcerated person receives, free of charge, an individual supply of hand soap and paper towels sufficient to allow frequent hand washing and drying each day; an adequate supply of clean implements for cleaning such as sponges and brushes and disinfectant hand wipes or disinfectant products effective against the virus that causes Covid-19 for daily cleanings;

   C.  Ensuring that all incarcerated people have access to hand sanitizer containing at least 60% alcohol;

   D.  Providing access to daily hot water showers and daily access to clean laundry, including clean personal towels and washrags after each shower;

   * FIx Vnits hoT wAter.

62

E.  Requiring that all Forrest City staff wear personal protective equipment, consistent with the CDC guidance, including mask and gloves, when interacting with any person or when touching surfaces in cells or common areas;

F.  Requiring that all Forrest City staff wash their hands, apply hands sanitizer containing at least 60% alcohol, or change their gloves both before and after interacting with any person or touching surfaces in cells or common areas;

G.  Immediately providing on a daily basis clean masks for all individuals and ensuring the masks are properly laundered with replacements as necessary;

H.  Ensuring that individuals identified as having Covid-19 or having been exposed to Covid-19 receive adequate medical care and are properly quarantined (without resorting to cohorting, if possible), in a non-punitive setting, with continued access to showers, recreation, mental health services, religious material, reading material, phone and video visitation with loved ones, communications with counsel, and personal property

I.  Cleaning and disinfecting frequently-touched surfaces with disinfectant products effective against the virus that causes Covid-19 (at the manufacturer's recommended concentration), as well as surfaces in common areas, every two hours during waking hours, and at least once during the night;

J.  Assuring incarcerated people are told they will not be retaliated against for reporting Covid-19 symptoms;

K.  Providing necessary medical treatment consistent with community standards for incarcerated people who are ill. MAKe A Plan for handling Contagions that works.

L.  Responding to all emergency (as defined by the medical community) requests for medical attention within one hour;

M.  Crafting a mechanism to ensure compliace through the appointment of an independent monitor with medical expertise to ensure compliance with these conditions, and provide the monitor with unfettered access to medical units, confidential communication with detained individuals in and of quarantine, and surveillance video of public areas of the facilities;

63

6.  Award Plaintiff's attorney's fees and costs, as provided by statute and law; and order such other and further relief as this Court deems just, proper, and equitable;

7.  Repair the hot water system so all of Wynne building has hot water;

8.  Provide needed instruments and equipment to the chapel so inmate's religious worship will not be impeded;

9.  Ban the use of the medical isolation area behind medical until it is refurbished and the spiders are removed for good, and that medical has staffing to provide needed items like shower shoes, towels, medication, soap, commissary, and TV like the rest of the compound has to inmates in their care;

"Prisoners may seek injunctions against conditions that may cause illness in the future, such as exposure to infectious diseases ..." Helling v McKinney; 509 U.S. 25 1135 CT 2475 (1993).

65

## CLOSING

Petitioners have not even had hot water for sanitation, washing, of showers through 2 pandemics now and the first Covid pandemic. this gave them years to fix the issues, yet they DO NOT CARE. Forrest City continues to deny religious worship, continually exposes Petitioner to Covid, making him severely sick multiple times, denying medications that are life-saving and prescribed

house him in units with black mold, and serve cold, sooispoiled food.

Petitioner has been fortunate enough that Covid-19 and Omicron were not more fatal than they were. but he worries that it is only a matter of time before a more deadly contagion arrives. And with the BOP not taking precautions and only responding to it, it will be too late, and too many lives will be lost.

And there is not an excuse to violate the Constitutional rights afforded to every human being. Petitioner respectfully asks this Honorable Court to intervene, and to release Petitioner to home confinement or alternatively, correct every constitutional violation, pay filing fees for this motion, and pay any damages this Court may deem fit.

Respectfully submitted,

Radd Tui

# AFFIDAVIT

My name is Henry McGuire, 30083-076

I am an inmate confined at FCC Forrest City-Low. I have been here since 2019. I was tested and positive for Covid in 2020. As a result I was put in what is a woodshop class area. This was the BOP's "quick isolation" area. It was full of woodworking saw and planers. It had overhead doors and was filthy. Flies, mice and other insects and animals came in all the time. We had cold food and medical did not come there on the weekends or on a lot of the days even though they said they did on reports.

I have colitis and need to use the restroom frequently. But they only had 2 toilets for 20-60 inmates. And shower hand wands were put in the toilet stalls to function as 2 showers.

I was there until we were told to pack up and go to medical. We were told we would only be there 24 hours. They locked 3 of us in a 2 man cell: me, Stearns, and Jennings. They put our personal property just outside the cell we were in.

Jennings had forgotten to get his meds, shower shoes, clean clothes, or towels because he was upset, and nobody would tell him or us why we were moved from bad conditions to worse.

The beds in the cell were all wet and there were spiders on the walls. There were 2 permanent beds and one portable cot in

there, one green toilet, and no cleaning supplies.

Jennings asked Mr. Poynor to let him get his blood pressure and asthma inhaler and other medications, and explained to him he forgot to get them along with his shower shoes and clean clothes. Poynor said, "No, too bad," and walked away.

Jennings then asked a nurse that walked by and she told him she can't let him get it. They would order the medications from the pharmacy and she did not have a towel or cleaning supplies to dry the beds with.

We had one toilet and three of us in a 6'x4' space, without soap or hot water.

Jennings asked to talk to a LT but no one ever came.He asked to talk to Psych and Dr. Owen came by, but she said there was nothing she could do. And  she had no idea why Wynne unit and Marianna had positive inmates, yet the five of us had been singled out for different treatment, as the approximately 1000 positive inmates in those units were never moved. They just designated those units as positive isolation units.

I think he got his meds 4 days later. A couple days after that, we were moved back to the VoTech woodshop.

We all got really sick from Covid and were treated like animals. Even today there is no hot water in our building for showers or doing dishes. COs won't let us go to other units to shower. And the black mold is still present. We also have no cleaning supplies. And medical doesn't see people when they write sick calls, or treat people when they see them.

I now have a colostomy bag because they did not treat the colitis within adequate time. And the BOP's response to Omicron is to not test anyone unless they have to, even though over 1000 inmates were just sick and coughing. I am afraid inmates will die if this Court does not intervene.

Respectfully submitted,

*Kenny McGuire*

3-13-22

# 31,000 Prisoners Sought Compassionate Release During COVID-19. The Bureau of Prisons Approved 36.

As the pandemic worsened inside federal prisons, officials granted fewer releases.

FILED 6:00 a.m. 06.11.2021

Exhibit P



**U.S. Department of Justice**
**Federal Bureau of Prisons**

**FOR IMMEDIATE RELEASE**
February 10, 2021

Contact: Office of Public Affairs
202-514-6551

### Inmate Death at FCI Forrest City

WASHINGTON, D.C.:   On Wednesday, December 23, 2020, inmate Chester Ray Stitts, Jr., tested positive for COVID-19 at the Federal Correctional Institution (FCI) Forrest City (Medium) in Forrest City, Arkansas, and was immediately placed in medical isolation.   On Sunday, January 31, 2021, Mr. Stitts was evaluated by medical staff for nausea and weakness and was subsequently transported to a local hospital for further treatment and evaluation.   On Saturday, February 6, 2021, his condition worsened and he was placed on a ventilator.   On Tuesday, February 9, 2021, Mr. Stitts, who had pre-existing medical conditions which the CDC lists as risk factors for developing more severe COVID-19 disease, was pronounced deceased by hospital staff.

Mr. Stitts was a 55-year-old black male who was sentenced in the Eastern District of Texas to a 156-month sentence for Possession with Intent to Distribute Methamphetamine.   He has been in custody at FCI Forrest City (Medium) since January 3, 2018.

FCI Forrest City (Medium) is a medium security facility that currently houses 1,049 male offenders.

The Bureau of Prisons will continue to provide daily updates and information on actions related to COVID-19 at www.bop.gov/coronavirus/index.jsp.

Additional information about the Bureau of Prisons can be found at www.bop.gov.

###

Volume: May 17, 2021 – Tracked and Compiled by the University of Iowa College of Law Federal Criminal Defense Clinic

# 253 DEATHS IN BOP CUSTODY[i], AN INCALCULABLE LOSS

## They Were Us.

Patrick Jones, 49, FCI Oakdale I • Nicholas Rodriguez, 43, FCI Oakdale I • Frank McCoy, 76, FCI Elkton, a veteran of the armed services and a long time managerial-level engineer • Wallace Holley, Jr., 56, FCI Oakdale I • Margarito Garcia-Fragoso, 65, FCI Elkton • David Townsend, 66, FCI Oakdale I, took a plea deal to avoid life • Woodrow Taylor, 53, FCI Elkton, Father of 3 and no prior federal criminal history • George Jeffus, 76, FCI Oakdale I • Charles Richard Rootes, 81, FCI Butner I • Andre Williams, 78, FCI Butner I, Father of two and underwent cardiovascular surgery during pendency of his trial in 2005 • Gary Edward Nixon, 57, FCI Butner I • Bradley James Ghilarducci, 73, FCI Terminal Island, Air Force Veteran • Alvin Turner, 43, FCI Elkton, AUSA at sentencing stated "he's a young man and maybe he will come out and benefit his family as well as society" • John Doe, FMC Devens • John Doe, 46, FCI Butner I • David Ehle, 71, FCI Elkton • Michael Lilley, 55, FCI Oakdale I • Fabian Tinsley, 67, FCI Butner I •William Hutsell, 62, FCI Elkton • Oliver M. Boling, 66, USP Lompoc • Anthony David Gentile, 59, FCI Danbuy, father and Business Systems Analysts • Michael Fleming, 59, FCI Terminal Island •

Arnoldo Almeida, 61, FMC Ft. Worth • Oscar Ortiz, 78, FMC Ft. Worth, Father to a reconnected daughter due to adoption • John Ng, 43, FCI Milan • Donnie Grabener, 65, FMC Ft. Worth • Richard Nesby, 55, FCI Elkton, father to 15 children who knew him to be funny and family-oriented and a versatile handyman • Daniel Kimbrough, 53, FCI Milan, attended Bemidji State University and was known to be a wonderful singer and avid gardener • Walker Minto, 73, FCI Butner I, husband • Andrea Bear, 30, FMC Carswell, was in her 3rd trimester of pregnancy at the time of her death • Stephen Cino, 54, FCI Terminal Island, wheelchair bound • Rex Damon Begay, Sr., 80, FCI Terminal Island, member of the Navajo Nation • Willie Peterson, 51, FCI Milan, father of four • Leonard Auerbach, 73, FCI Terminal Island, University of Wisconsin Madison graduate, UC Berkley PhD, former professor at St. Mary's College, father of two sons • Randy Bise, 57, USP Yazoo City, truck driver • Kevin Ivy, 59, FMC Ft. Worth • Douglas Reid, 56, FTC Oklahoma City, no prior criminal history and was gainfully employed his whole life • Eduardo Robles-Holguin, 58, FCI Terminal Island, an immigrant • Darrel Underhill, 76, FMC Devens • William E. Miller, 58, FCI Butner I • Jimmie Lee Houston, 75, USP Lompoc, single father and was in the early stages of

kidney failure at the time of sentencing • James Druggan, 70, FCI Elkton, former United States Marine, Vietnam Veteran and father of two • George Lewis Escamilla Sr., 67, FCI Oakdale II Satellite Camp, classified as a T3 paraplegic due to Black Heel Ilness • Michael Brookwalter, 56, FCI Elkton • Scott Douglas Cutting, Sr., 70, FCI Terminal Island • Guadalupe Ramos, 56, FMC Ft. Worth • Vernon Adderley, 56, FMC Ft. Worth • Juan Mata, 59, FMC Lexington • Thomas Jackson Rogers, 79, FMC Ft. Worth • James Xavier Lino, 65, Terminal Island, was six months away from release and on May 6, 2020, his request for transfer to home confinement was denied • Carlos Caldero Mendoza, 60, FMC Lexington, was extremely close with wife and children and this was his only involvement in the criminal legal system • Richard Saettel, 66, FMC Lexington • Jerry Lynn Dempsey, 59, FCI Butner I • Charles Lyn Hanberry, 74, FMC Ft. Worth, while in the military he received the Air Force Commendation Medal for Meritorious Service on two different occasions and the Armed Forces Radio & Television Service Director's Award in recognition of outstanding personal efforts contributing to the professional excellence of military broadcasting • Bich Ngoc Tran, 50, FMC Ft. Worth • Joseph Michael Young, 63, FMC Ft. Worth • Fidel

Torres, 62, FMC Lexington • Gregory Phinton Glenn, 56, USP Terre Haute • Eric Spiwak, 73, FCI Butner I, while serving in Vietnam, received a Purple Heart and Bronze Star Medal for Valor • Isaac Lamar Byers, 52, FCI Butner I • Bernardo Luis Olarta-Loaiza, 63, FCI Butner I • Dongfan Greg Chung, 84, FCI Butner I • Mohamed Yusef, 37, FCI Lompoc • Steve Arthur Robinette, 79, FCI Butner • David Grant, 63, FCI Butner, known to have a real Godly heart and was an inspiration to the whole family • Daniel Lee Vadnais, 56, FCI Lompoc, skilled marine mechanic and father of two • Juan Ledoux-Moreno, 74, FCI Butner • Robert Herndon, 62, FMC Devens, died while committed by court order for mental health issues • Bobby Lee Medford, 74, FCI Butner, former Buncombe County sheriff • Andrew Charles Markovci, 56, FCI Butner • Stephen Cook, 48, FMC Lexington • Emanuel Brewster Jr., 50, FCI Yazoo City • John A. Brust, 77, FCI Butner • Charles Woolsey, 69, FMC Lexington, Air Force Veteran and father • Dewayne Antonio Mitchell, 43, FCI Yazoo City, Devoted father to five children, nicknamed "G-Wayne" and known to have a "heart of gold" • Robert Hoffman, 75, FMC Fort Worth • Mark E. Hebert, 61, FCI Butner, Was diagnosed with bipolar disorder and suffered from five heart attacks before sentencing •

John Marrone, 85, FCI Butner • Wayne Delvin Littlecrow, 55, FCI Butner • Michael McDonald, 80, FCI Terminal Island • Joe Tapia, 55, FCI Butner, Husband and father of two • Norman F. Grimm Jr., 66, FCI Butner • Jack Edward Talledo, 61, FCI Butner • Robert Hague-Rogers, 83, FMC Fort Worth, Sole owner of a company • Daniel Morris, 70, FMC Lexington, Voluntarily Surrendered into custody • Ivan Gonzalez Ramirez, 68, FDC Miami, Was awaiting trial • John A. Dailey, 62, FCI Butner, Had filed a Compassionate Release Motion less than two months prior to his death • Malcolm L. Scarbrough, 85, FCI Coleman • James Giannetta, 65, FCI s • Sandra Kincaid, 69, FMC Carswell, A mother and grandmother and known to go out of her way to help others • Teresa Ely, 51, FMC Carswell, Mother and grandmother • Romie Roland, 61, FCI Jesup's Satellite Camp, Was a physician • Jacky Pace, 78, FCI Seagoville • Mark Stamps, 59, FCI Seagoville • Gerald Porter, 73, FMC Lexington • Earl James, 65, USP Marion • Veronica Martinez Carrera-Perez, 44, FMC Carswell, Was denied a sentence reduction 4 months before her death • Saferia Johnson, 36, FCI Coleman's Satellite Camp, Mother of two children and worked with the juvenile justice department • Jose Barragan, 69, FCI Miami • Taiwan Davis, 39, USP Marion, Had been in custody for less than a year at the time of his death • Eugene Griffin, 80, USP Atlanta • Jose Mario Gallego Zapata, 66, FDC Miami •

Wendy Campbell, 56, FMC Carswell, Has been at FMC Carsell since March, 2020 • Luis A. Velez, 58, FCI Coleman • Norman Duncan, 50, FCI I Victorville, Father • Marie Neba, 56, FMC Carswell, Mother to three sons and suffered from terminal breast cancer • Wendell Eaves, 63, FCI Seagoville • Byron Dale Bird, 65, USP Terre Haute • Ricky Lynn Miller, 62, FCI Butner • Tim Hocutt, 53, FCI Terre Haute, Father to a son who died at the age of 14 • Victor Cruz, 47, MCC San Diego, Loved father and grandfather • Thomas Krebs, 72, FMC Lexington • Barry Johnson, 48, FCI Edgefield • Tommy Sisk, 62, FCI Petersburg • Robert Pierce, 52, FCI Big Spring • Ricky Eagle Elk, 52, USP Coleman II • Darin Taylor, 60, FCI Big Spring, Known as a pillar of intent and integrity among his community and daughters • Joe McDuffie, 58, FCI El Reno • Glenn Coleman Jr., 48, FCI Big Spring, Designated as a disabled adult • Colin Bobsy, 52, MCFP Springfield, Suffered 54 cardiac arrests in less than three years • Gary Tubby, 60, MCFP Springfield • Samuel Prieto, 58, MCFP Springfield, Filed for Compassionate Release in April 2020 • Waylon Young Bird, 52, MCFP Springfield, Wrote a letter begging to be released one week before his death • Rice Stanley, 60, USP Tucson, Married • David Cross, 45, MCFP Springfield • Jimmie Largo, 48, MCFP Springfield • Torrick Lyle, 43, MCFP Springfield, Filed for Compassionate Release and sent 3 letters to his sentencing judge begging for release • Edwin Trout, 69,

FCI Talladega • Ralph Thomas, 87, MCFP Springfield, had already served longer in prison than any sentence that would have been imposed under the law as it exists today • Charles Fankhauser, 64, FCI Bastrop • Louis Allen Rector, 62, FMC Butner • Matthew Shubart, 41, FCI La Tuna, a chef and beloved son, his motion for release was denied less than two months before his death • Robert Dobyns, 48, USP Tucson • Stanley Carr, 66, USP Tucson • Avery Poynter, FCI Ashland, Loved son, His motion for Compassionate Release was denied less than two months before his death • Derrick Howard, 51, USP Tucson, His motion for compassionate release was pending when he died. • Félix Repilado Martínez, 67, North Lake Correctional Institution, had a passion for folkloric dance, Father • Austin Robinson, 46, MCFP Springfield, Father • Ronald Hovey, 67, FCI Texarkana, Founded the Grace for All Ministries, which serviced those without homes and who struggled with addiction • James Lee Wheeler, 78, FCI Terre Haute, Loving brother and friend, His motion for compassionate release was pending when he died • Andrew Goldberg, 38, FCI Coleman • John Lewis, 70, USP Allenwood • James Jones, 79, FCI Ashland, Loving husband and father • Robert Taylor, 46, FCI Ashland • Horace Nelson, 64, FCI Victorville • Ross Tewangoitewa, 74, FCI La Tuna, member of the Hopi Nation and a Village of Songoopavi elder • Timothy Bower, 56, FCI Ashland, a

brother and Michigander compassionate release motion was denied the day after his death • Rafael Guerrero, 70, MCFP Springfield • Michael Gerard Smith, 59, FCI Florence, Loving uncle who wanted to show his nieces and nephews people can change, died just 5 months from his release date • Armando Velasquez, 70, FTC Oklahoma City, Father to 6 daughters, farmworker, and truckdriver • Murry Malone Bailey, 71, USP Tucson • Anthony Casso, 78, USP Tucson, Father • Terry Drake, 73, USP Tucson • John Rodrigues, 65, USP Tucson, Died two days before a hearing on his compassionate-release motion • John Doe, Butner Low • Manuel Dikran Sassounian, 78, MDC Los Angles, Born in Scotland • Christopher Carey, 72, FCI Lompoc, A motion for compassionate release had been pending since 8/24/2020 • Larry Lanell Bennett, 49, FCI Memphis, He worked as a cook and wanted to get home to his daughter • Carl Merlo, 59, FCI Beaumont, Navy veteran who served on the USS Wainwright, loving father and grandfather, phlebotomist • Gary Wayne Kilgore, 72, FCI Ashland, Brother and friend • Jimmy Allen Monk, 60, FCI Talladega • David Rowe, 73, FMC Devens, His motion for compassionate release was pending for 4 months; he filed an emergency motion the day before his death • Robert Levine, 79, FCI Phoenix, Attended NYU, heavily involved in charities and foundations, taught GED courses while serving his sentence • James Velez, 61,

FCI Ashland • **John Charles Buffalo,** 51, USP McCreary • **Richard James,** 61, MCFP Springfield, Kind-hearted, generous person and a good father • **John Doe,** MCFP Springfield • **Charles Winters,** 84, FMC Devens, a Californian • **Carmelo Estrada,** 58, MCFP Springfield, a Texan • **Michael Martinez,** 75, FMC Fort Worth, Veteran and Brother • **Joe Gary Rivas, Jr.,** 75, FMC Fort Worth, Loving Uncle and former restaurant owner • **James Graves,** 65, FMC Devens • **Stuart Manley,** 78, FMC Devens • **Nelson Del Rio Rodriguez,** 65, FCI Williamsburg, Cubano, Father, brother, and grandfather • **Fred Keys,** 57, FCI Fairton, Father and one of 6 children • **Michael Ryle,** 77, MCFP Springfield • **Sean McQuiddy,** 54, FCI Forrest City, His fiancé and grandmother always held out hope that he would come home • **Willie Smith,** 73, FMC Devens • **Michael Hollingsworth,** 60, MCFP Springfield, • **Kevin Gayles,** 38, FCI Jesup, Loving brother and father, in the process of obtaining his GED • **Antwonne D. White,** 55, FCI Butner II, Father • **Harry Edward Cunningham,** 54, FCI Memphis, Trucker and Father of two • **Richard Lee Red Fox,** 59, FCI Sandstone, Blackfeet Nation member • **George Maurice Steele,** 37, FCI Talladega • **Andre Vasquez,** 76, MCFP Springfield, Welding Instructor • **Ruben Gil,** 54, FMC Devens • **Thomas Eugene Church,** 63, USP Leavenworth, Father and Grandfather • **Steven Brayfield,** 63, USP Leavenworth, Loving Brother and Son • **Shauntae Hill,** 44, FCI Terre Haute, Known as an excellent Father and the backbone of the family • **Spencer Lee Sarver,** 65, USP Atlanta, Georgian • **William Dahl,** 60, FCI Williamsburg • **Charles McRae,** 69, FMC Devens • **George Adams,** 68, FCI Hazelton • **Myron Crosby,** 58, FCI Fort Dix, Father and Grandfather • **Pedro Lopez-Vargas,** 59, MCFP Springfield • **John Doe,** Lompoc • **Victor Bigman,** 58, FCI Victorville II, Born and raised in Oakland, California, Member of the Kaibito Community, Welder, Husband, and Father to three sons • **Robert Ivan Horton,** 52, FCI Edgefield • **Joe Lee Adams,** 64, FCI Williamsburg • **Charles Purly Romero,** 64, USP Tucson, Member of the Taos Pueblo Nation • **Omar Adonis Guzman-Martinez,** 48, MCFP Springfield, Citizen of the Dominican Republic, Father of three children • **Toribio Ornelas Vasquez,** 79, FCI Florence, Husband and Father • **Mark Anthony Sealy,** 56, MCFP Springfield • **Theodore Kootswatewa,** 70, Member of the Hopi Nation • **William Ray Wooten,** 70, FCI Butner II • **Otis Morris,** 69, FCI Gilmer, Honorably discharged Veteran and Father • **Edwin Segarra,** 46, MDC Brooklyn, Loving Father of four, Brother, Participant in classes at Columbia University • **John Doe,** FCI Butner Low • **Joseph Lee Fultz,** 52, FCI Terre Haute, Maintained a career in computer networking and technical support • **Abdul-Aziz Rashid Muhammad,** 64, FCI Butner II, Father • **Chester Ray Stitts, Jr.,** 55, FCI Forest City • **Girard Lafortune,** 63, FMC Devens • **Wayne Spinks,** 75, FCI Edgefield • **Johnathan Del argy, 60**, FCI Seagoville Sole Provider for his family **Marcelo Ramos-Ortiz,** 59 FCI Oakdale II • **John Doe** USP Florence • **Icee Omar Ali,** 61, USP Florence, Proud Uncle • **Jesse O. Carter,** 54 FCI Talladega • **Curtis Horne,** 59, USP Florence • **Fernando Marulanda Trujillo,** 69, FCI Fort Dix, Columbian National • **Jaime Benavides,** 49, MCFP Springfield, a Texan • **Leonard Williams,** 53, MCFP Springfield • **Chad Noziska,** 47, FCI Sheridan, a Montanan • **William Andrew Davison,** 61, USP Tucson, member of the Coeur D' Alene Tribe of Idaho • **Paul F. Archambault, Sr.,** 83, FMC Devens • **Revardo White,** 61, USP Yazoo City, Loving Son •

---

i This number includes the 235 federal deaths in BOP-managed facilities, community-based facilities, and while on home confinement (https://www.bop.gov/coronavirus/); the 10 deaths in the Government-contracted, privately-managed prisons, *id*; and the 8 individuals who died while inprisoned at D. Ray James Correctional Institute, https://www.bop.gov/locations/ci/drj/. Moshannon Valley Correctional Institute, https://www.bop.gov/locations/ci/mvc/, and Rivers Correctional Institute, https://www.bop.gov/locations/ci/riv/, who are no longer listed on the BOP's coronavirus death tracker.

Sean McQuiddy contracted COVID-19 while at a federal prison in Forrest City, Arkansas. "If I don't make it out of here," his brother said he told them, "just know that I love you." Courtesy of Darrell McQuiddy

By KERI BLAKINGER AND JOSEPH NEFF

The last time Sean McQuiddy called home from federal prison, it was just before

Christmas in 2020, and he had grim news: He'd tested positive for COVID-19.

This story was published in partnership with The Guardian.
"If I don't make it out of here," his brother recalled him saying on the call, "just know that I love you."

McQuiddy, a 54-year-old man from Nashville, Tennessee, was 23 years into a life sentence for selling crack. The two dozen other defendants in his case had already gotten out, including his younger brother Darrell, who had scored a reduced sentence a few years back.

But due to a technicality, Sean wasn't so lucky. And when the pandemic hit, he was worried: He was overweight, with high blood pressure, asthma and other breathing problems. In August, he begged prison officials for compassionate release, citing the heightened threat of the virus. But court records show the warden ignored his request. Four months later, McQuiddy started coughing.

Tens of thousands of federal prisoners applied for compassionate release after the virus began sweeping through lockups. But new Bureau of Prisons data shows officials approved fewer of those applications during the pandemic than they did the year before. While the BOP director greenlit 55 such requests in 2019, a new director who took over in early 2020 approved only 36 requests in the 13 months since the pandemic took hold in March 2020. The downturn in approvals came even as the number of people seeking compassionate release skyrocketed from 1,735 in 2019 to nearly 31,000 after the virus hit, according to the new figures.



The Bureau of Prisons' Forrest City facility in Arkansas, where Sean McQuiddy contracted COVID-19 while incarcerated. Opposing his request for compassionate release in court, prosecutors wrote: "COVID-19 is not fatal in most cases."

Danny Johnston/Associated Press

Because the numbers were compiled for members of Congress, BOP spokesman Scott Taylor said the agency would not answer any questions about the data, "out of respect and deference" to lawmakers.

But Shon Hopwood, a Georgetown law professor, called the bureau's decrease in compassionate releases during the pandemic "mind-boggling."

"They let people die in prison that shouldn't have had to die," he said.

Federal judges have stepped in to release thousands of people in the face of BOP inaction. And the bureau continues to face intense scrutiny and several lawsuits over its handling of COVID-19. Since the first reported case last spring, more than 49,000 federal prisoners have fallen ill and 256 have died, according to corrections data tracked by The Marshall Project.

Thirty-five of those who died were waiting for a decision on their release requests — including McQuiddy.

3 of 6

# P

eople in federal prisons seeking release during the pandemic have two main ways to get out early. One is home confinement, which allows low-risk prisoners to finish their sentences at home or in a halfway house. They're still considered in custody, and the decision to let them out is entirely up to the Bureau of Prisons. As COVID shutdowns began last March, Congress expanded the eligibility criteria and then-Attorney General Bill Barr ordered prison officials to let more people go. Since then, more than 23,700 people have been sent to home confinement — though several thousand of them may have to return to prison once the pandemic ends.

The other way to get out early is through compassionate release. If a warden endorses a prisoner's request, the case goes to BOP's central office, which usually rejects it. But if a warden denies a request or 30 days pass with no response, then the incarcerated person can ask a judge to reduce the sentence to time served. The new data showed 3,221 people have been let out on compassionate release since the start of the pandemic — but 99% of those releases were granted by judges over the bureau's objections.

Last fall, The Marshall Project published data showing that the Bureau of Prisons rejected or ignored more than 98% of compassionate release requests during the first three months of the pandemic. Citing that reporting, federal lawmakers in December wrote to the agency to demand more data on both compassionate release and home confinement.

The updated figures outlined in the agency's response to Congress in April showed that BOP wardens actually endorsed slightly fewer compassionate release requests as the pandemic progressed. In the first three months, wardens approved 1.4% of release applications. The central office rejected most of those, with Director Michael Carvajal ultimately approving just 0.1%. By the end of April — more than a year into the pandemic, and after more than 200 prisoner deaths — wardens had approved 1.2% of applications, and Carvajal again accepted just 0.1%.

By comparison, federal judges approved 21% of compassionate release requests they considered in 2020, according to a recent report from the U.S. Sentencing Commission.

# T

he McQuiddy brothers grew up in the projects of Nashville, riding go-karts together and playing football. But they both dropped out of high school, and by the late 1980s began selling drugs — running a crack house seemed like a way out of the poverty around them, Darrell McQuiddy said.

## Sign up for the latest news.

☑

*Daily news and opinion about criminal justice*

☑

*Weekly roundup of top stories from the web*

☑

*A guided tour of the criminal justice system*

☐

*Essays from people involved in the system*

Subscribe

*Email list managed by Mailchimp*

 In 1997, both brothers got arrested. While Darrell ended up with a little under 25 years in prison, Sean got a mandatory life sentence because he'd paid a 17-year-old to work in the crack house, court records show.

After Congress passed drug sentencing reforms starting in 2010, the brothers grew hopeful they would not die in prison. But only one of them qualified for a shorter sentence under the new laws: Darrell got nearly four years off his time because his presentence report only mentioned powdered cocaine in the description of his crime. Sean's presentence report also listed crack, so he wasn't eligible for a sentence reduction.

"It was so unfair what happened to him," Sean's lawyer, Michael Holley, said. "It's the kind of crack case that wouldn't get a life sentence today."

F
or the most part, the bureau has offered little insight into its reasons for denying

compassionate release. According to the information BOP sent to Congress, wardens denied nearly 23,000 requests because the person "does not meet criteria." Roughly 3,200 people were denied because their cases were "not extraordinary and compelling," while a little over 1,200 were rejected for not providing enough information or documentation. Four people met the criteria but were denied due to "correctional concerns," the agency said.

Of the 374 prisoners that wardens recommended for compassionate release during the pandemic, the agency's central office rejected or did not respond to just over 90%, apparently without making any note as to why. "The BOP does not track the specific reasons for approval or denial of a compassionate release request at the Central Office level, as there can be several reasons for a particular decision," wrote General Counsel Ken Hyle. Some of those reasons, he added, could be opposition from federal prosecutors, a lack of release plan or fear that letting someone out would "minimize the severity of the inmate's offense."

Prisoners who brought their requests to court usually encountered opposition from federal prosecutors. Alison Guernsey, a clinical associate professor at the University of Iowa College of Law, reviewed the cases of all prisoners who have died of the virus, including those who were seeking compassionate release. She said the Department of Justice often said prisoners requesting release couldn't prove they'd asked the warden first. Sometimes, prosecutors argued that the Bureau of Prisons was doing its best to handle the pandemic responsibly, or that the incarcerated person begging for release wasn't really at high risk from the virus.

"In court, prosecutors were fighting release and saying that this person doesn't have a condition that makes them vulnerable — and then they would die, and the BOP would issue a press release saying that the person had underlying conditions," Guernsey said. "The two-faced position of the Department of Justice, which includes the BOP, is really quite shocking."

Often, judges agreed with the prosecutors' reasoning. But in some cases, the judges never made a decision — or the prisoners died first.

# B

y the time the pandemic hit, McQuiddy was not in good health and had already

spent several months in a medical prison. Still, several times a day he talked to his brother — who'd been released in 2015 and started a dump truck company, where he hoped Sean would one day work.

When the warden ignored McQuiddy's request for compassionate release, he went to court. Prosecutors opposed him, saying he hadn't made any plan to address his riskiest underlying condition — obesity — and that he'd be safer in prison because no one at the Arkansas facility where he was locked up had died from the virus yet. "COVID-19 is not fatal in most cases," they wrote in a court filing.

But COVID-19 swept through the prison a few weeks later, and McQuiddy fell ill. Christmas came, and he didn't call home. Finally, the prison called in late December and told his family he'd been moved to an outside hospital and put on a ventilator. His brother and daughters went to see him, and his lawyer again asked the judge to consider McQuiddy's plea for release. Once again, prosecutors opposed it, this time saying that it wasn't safe to let him out now that he'd already fallen sick.

The judge didn't rule for more than a month. Finally, in late January, he weighed in.

"All pending motions are DENIED as moot," District Judge William L. Campbell wrote on Jan. 22, directing the clerk to close the file.

McQuiddy had died 11 days earlier.

## This is not a paywall.

We'll never put our work behind a paywall, and we'll never put a limit on the number of articles you can read. No matter what, you can always turn to The Marshall Project as a source of trustworthy journalism about the criminal justice system.

Donations from readers like you are essential to sustaining this work. Knowing that you're behind us means so much. Can we count on your support today?

Donate

Exhibit 4                    2

**U.S. Department of Justice**                    **Central Office Administrative Remedy Appeal**

Federal Bureau of Prisons

Type or use ball–point pen. If attachments are needed, submit four copies. One copy each of the completed BP–DIR–9 and BP–DIR–10, including any attachments must be submitted with this appeal.

From: **Jennings Randal G**                    **21384-045**        **WC**        **Forrest City Low**
LAST NAME, FIRST, MIDDLE INITIAL            REG. NO.            UNIT            INSTITUTION

**Part A—REASON FOR APPEAL** Since Chaplin Ford left. The chapel has not had sevices on a regular basis for Christians. Jan 5, and 12th were missed and never made up and in fact in the last 2 years they were only open 62% of the time for services.Chaplin Johnson does not care if it opens. Or if programs can run. He permently shut down the library, and video programs. He refuses to buy needed instruments and strings, drum heads or fix the piano that has been untuned for over 12 years. This was before the Covid crisis.The Chapel has been closed for months, and staff never even tried to pass out materials so inmates could still have worship in the units. 42 U.S.C. 1997 is regularly violated at this facility. We need God here and we need a staff who are professional and dedicated to there jobs. Thank You for your consideration.

10-2-2020
DATE                                        SIGNATURE OF REQUESTER

**Part B—RESPONSE**

RECEIVED
OCT 1 3 2020
Administrative Remedy Section
Federal Bureau of Prisons

DATE                                        GENERAL COUNSEL
**ORIGINAL: RETURN TO INMATE**              CASE NUMBER: 1010595-A1

Exhibit 4

**Administrative Remedy No. 1005818-A2**
**Part B - Response**

This is in response to your Central Office Administrative Remedy Appeal wherein you allege over half of your worship services have been cancelled within the last year. You further complain that there are musical instruments in need of repair or replacement. For relief, you request access to religious programs and new musical instruments.

Following our review, we find your complaint is repetitive to Central Office Administrative Remedy Appeals 1010595-A1, for which we previously provided a response. That is, we do not find the appeals materially or substantively different and, as such, we refer you to that response, rather than elaborating further with like conclusions.

You are advised Chaplaincy Services staff at your institution have determined the musical instruments are sufficient for usage for the weekly Protestant Service and no additional musical equipment will be purchased at this time. We encourage you to work with staff at the local level to address any other religious needs you may have, to include future repairs or replacement of instruments once the institution returns to normal operations.

Accordingly, this response is provided for informational purposes only.

_____
Date

_____
Ian Connors, Administrator
National Inmate Appeals

Exhibit 5

RANDAL G JENNINGS, 21384-045
FORREST CITY FCI    UNT: WYNNE U    QTR: W11-136L
P.O. BOX 7000
FORREST CITY,  AR 72336

U.S. Department of Justice

Federal Bureau of Prisons

**Central Office Administrative Remedy Appeal**

Type or use ball–point pen. If attachments are needed, submit four copies. One copy each of the completed BP–DIR–9 and BP–DIR–10, including any attach–ments must be submitted with this appeal.

From: __Jennings Randal G__          __21384-045__      __WB__      __Forrest City Low__
      LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION

**Part A—REASON FOR APPEAL** I had an issue I was told would be fixed.Mr Thomas Johnson instead of fixing the issue did not do what he said he would do.I filed a BP8, and within 5 minutes of replying to the counselor about it closed the library until further notice. He then told staff, who told inmates it was because he was filed on. I talked to other staff who told me that was why he closed it.It was done for no other reason but have a "chilling effect" on writing informal resolutions.This BP is to report a violation of my constitutional right and access to the court. At the BP9 level it was never even investigated.I have avitdavit's by 4 people who were all told it was in retaliation to the BP8. I was told this by a staff member also. The library remained closed almost 4 weeks. The story that the staff started saying AFTER this BP was filed was they were doing inventory. Yet, the library is ONE room that EVERYTHING in it can be counted in 10 minutes.What happened to intergrity? Also in your reply it says this was addressed in another BP, that is not correct.That issue was the origional problem that could have been easily solved. The problem with retaliation and denial of constitutional rights are a much bigger issue. As we can not get acess to the courts without BP process.Here at Forrest City they do not even try to solve issues. Instead they retaliate. And I have documentation that support my allegations.

__11-30-17__
      DATE                                              SIGNATURE OF REQUESTER

**Part B—RESPONSE**

RECEIVED

DEC 1 1 2017

Administrative Remedy Section
Federal Bureau of Prisons

_____          GENERAL COUNSEL
      DATE
ORIGINAL: RETURN TO INMATE                    CASE NUMBER: __916694-A1__

**Part C—RECEIPT**
                                                 CASE NUMBER: _____

Return to: _____
      LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION
SUBJECT: _____

_____          _____          BP–231(13)
      DATE                    SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL          APRIL 1982
USP LVN

U.S. Department of Justice

Federal Bureau of Prisons

**Central Office Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-DIR-9 and BP-DIR-10, including any attachments must be submitted with this appeal.

From: Jennings, Randal G     21384-045     WR     Forrest City Low

     LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

**Part A—REASON FOR APPEAL** I had an issue I was told would be fixed. Mr Thomas Johnson instead of fixing the issue did not do what he said he would do. I filed a BP8, and within 5 minutes of replying to the counselor about it closed the library until further notice. He then told staff, who told inmates it was because he was filed on. I talked to other staff who told me that was why he closed it. It was done for no other reason but have a "chilling effect" on writing informal resplutions. This BP is to report a violation of my constitutional right and access to the court. At the BP9 level it was never even investigated. I have avitdavit's by 4 people who were all told it was in retaliation to the BP8. I was told this by a staff member also. The library remained closed almost 4 weeks. The story that the staff started saying AFTER this BP was filed was they were doing inventory. Yet, the library is ONE room that EVERYTHING in it can be counted in 10 minutes. What happened to intergrity? Also, in your reply it says this was addressed in another BP, that is not correct. That issue was the origional problem that could have been easily solved. The problem with retaliation and denial of constitutional rights are a much bigger issue. As we can not get acess to the courts without BP process. Here at Forrest City they do not even try to solve issues. Instead they retaliate. And I have documentation that support my allegationa.

11-30-17

     DATE                          SIGNATURE OF REQUESTER

**Part B—RESPONSE**

**RECEIVED**

DEC 11 2017

Administrative Remedy Section
Federal Bureau of Prisons

_____           _____

     DATE                          GENERAL COUNSEL

FIRST COPY: WASHINGTON FILE COPY          CASE NUMBER: 916694-A1

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**Part C—RECEIPT**

                                  CASE NUMBER: _____

Return to: _____ _____ _____ _____

     LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

SUBJECT: _____

_____          _____

     DATE                   SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

USP LVN                                             BP-231(13)
                                                                       APRIL 1982

U.S. Department of Justice

Federal Bureau of Prisons

**Central Office Administrative Remedy Appeal**

Type or use ball–point pen. If attachments are needed, submit four copies. One copy each of the completed BP–DIR–9 and BP–DIR–10, including any attachments must be submitted with this appeal.

From: **Jennings Randal G**                    21384-045          UB          Forrest City Low
         LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION

**Part A—REASON FOR APPEAL** I had an issue I was told would be fixed.Mr Thomas Johnson instead of fixing the issue did not do what he said he would do.I filed a BP8 and within 5 minutes of replying to the counselor about it closed the library until further notice. He then told staff, who told inmates it was because he was filed on. I talked to other staff who told me that was why he closed it.It was done for no other reason but have a "chilling effect" on writing informal resplutions.This BP is to report a violation of my constitutional right and access to the court. At the BP9 level it was never even investigated.I have avitdavit's by 4 people who were all told it was in retaliation to the BP8. I was told this by a staff member also. The library remained closed almost 4 weeks. The story that the staff started saying AFTER this BP was filed was they were doing inventory. Yet, the libraryyis ONE room that EVERYTHING in it can be counted in 10 minutes.What happened to intergrity? Also, in your reply it says this was addressed in another BP, that is not correct.That issue was the origional problem that could have been easily solved. The problem with retaliation and denial of constitutional rights are a much bigger issue. As we can not get acess to the courts without BP process.Here at Forrest City they do not even try to solve issues. Instead they retaliate. And I have documentation that support my allegationm.

11-30-17
_____          _____
         DATE                    SIGNATURE OF REQUESTER

**Part B—RESPONSE**

_____          GENERAL COUNSEL
         DATE                    CASE NUMBER: **916694-A1**

SECOND COPY: REGIONAL FILE COPY

**Part C—RECEIPT**

                                        CASE NUMBER: _____

Return to: _____          _____          _____          _____
         LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION

SUBJECT: _____

_____          _____
         DATE                    SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL          BP–231(13)
USP LVN                                                                                        APRIL 1982

**U.S. Department of Justice**

Federal Bureau of Prisons

**Central Office Administrative Remedy Appeal**

Type or use ball–point pen.  If attachments are needed, submit four copies.  One copy each of the completed BP–DIR–9 and BP–DIR–10, including any attachments must be submitted with this appeal.

From: **Jennings Randal G**              21384-045           UB           Forrest City Low
LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.              UNIT          INSTITUTION

**Part A—REASON FOR APPEAL** I had an issue I was told would be fixed.Mr Thomas Johnson instead of fixing the issue did not do what he said he would do.I filed a BP8 and within 5 minutes of replying to the counselor about it closed the library until further notice. He then told staff, who told inmates it was because he was filed on. I talked to other staff who told me that was why he closed it.It was done for no other reason but have a "chilling effect" on writing informal resplutions.This BP is to report a violation of my constitutional right and access to the court. At the BP9 level it was never even investigated.I have avitdavit's by 4 people who were all told it was in retaliation to the BP8. I was told this by a staff member also. The library remained closed almost 4 weeks. The story that the staff started saying AFTER this BP was filed was they were doing inventory. Yet, the library is ONE room that EVERYTHING in it can be counted in 10 minutes.What happened to intergrity? Also, in your reply it says this was addressed in another BP, that is not correct.That issue was the origional problem that could have been easily solved. The problem with retaliation and denial of constitutional rights are a much bigger issue. As we can not get acess to the courts without BP process.Here at Forrest City they do not even try to solve issues. Instead they retaliate. And I have documentataon that support my allegations.

11-30-17
_____                    _____
DATE                                          SIGNATURE OF REQUESTER

**Part B—RESPONSE**

_____                    GENERAL COUNSEL
DATE                                          _____

THIRD COPY: WARDEN'S ADMINISTRATIVE REMEDY FILE     CASE NUMBER: 916694-A1

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**Part C—RECEIPT**
                                              CASE NUMBER: _____

Return to: _____
           LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.        UNIT        INSTITUTION

SUBJECT: _____

_____                    _____
DATE                                          SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

USP LVN                                                              BP-231(13)
                                                                     APRIL 1982

exhibit 6

RANDAL G JENNINGS, 21384-045
FORREST CITY FCI    UNT: WYNNE L    QTR: W05-108L
P.O. BOX 7000
FORREST CITY,  AR 72336

THIS COPY PROVIDED TO INMATE

STAFF SIGNATURE

ISSUED:    11/29/17

**U.S. DEPARTMENT OF JUSTICE**
Federal Bureau of Prisons



**REQUEST FOR ADMINISTRATIVE REMEDY**

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: <u>Jennings Randal g</u>       <u>21384-045</u>      <u>WB</u>      <u>Forrest City Low</u>
          LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.            UNIT                  INSTITUTION

**Part A- INMATE REQUEST** I was lied to 3x by Mr T Johnson.When I wrote a BP8 about the problem instead of trying to resolve it,he shut down the very program the Bp8 referenced.He shut it down within 5 minutes of sending the Bp8 back.He then told staff, who told inmates it was because of him having to respond to a bp.This was done to "chill a person from complaining about problems" a direct violation of the First Amendment rights,and the 8th Amendment.This started as a small easily fixable issue,but by retaliation and violating constitutional rights,also the fact that temp closing a program shows how much Mr Johnson cares about his programs.Yet,BOP is now asking congress for more funding for programs,These Are important programs but the staff have to acually care about them for them to work.I ask as a resolution the US Dept of Justice investigate the funding and running of the chapel programs. And stop retaliation and the denial of constitutional rights when Bp's are filed. And stop the retaliatory "temporary closing" of the chapel library.And use the funding designated to the low for the low, not medium.;

<u>9-11-17</u>
     DATE

_____
        SIGNATURE OF REQUESTER

**Part B- RESPONSE**

RECEIVED SEP 27 2017 BY: 9/27/17

_____            _____
        DATE                              WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

**ORIGINAL: RETURN TO INMATE**              CASE NUMBER: 716674-F1

                                            CASE NUMBER: _____

**Part C- RECEIPT**

Return to: _____
              LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.        UNIT        INSTITUTION

SUBJECT: _____

_____            _____
        DATE                              RECIPIENT'S SIGNATURE (STAFF MEMBER)

                                                          BP-229(13)
USP LVN                                                   APRIL 1982

U.S. Department of Justice                          **Central Office Administrative Remedy Appeal**
Federal Bureau of Prisons

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-DIR-9 and BP-DIR-10, including any attach-
ments must be submitted with this appeal.

From: Jennings Randal G                  21384-045            WC            Forrest City AR
         LAST NAME, FIRST, MIDDLE INITIAL            REG. NO.            UNIT            INSTITUTION

**Part A—REASON FOR APPEAL** Senior management is intentionally understaffing the chapel.
Right now we have 0 chaplins here.Ther e is only 1 at the medium to do all 3 places
We only can have an hour time for service and that is during mainline. They hired
1 RSA but then she refuses to work on the weekends so now the Christians haveno
Service on Sundays. But the Muslem services are never missed.This is discrimination
than the AW blames it on President Trump.(see bp 10)They have closed with no
service Many days over 100 in 6 months.I have documents and witness statements
to back it.These days were never made up.We need 2 full time chaplins and a Rsa
willing to work weekends so we are not denied our constitutional rights of religion
and discriminated against as the muslems never miss because staff are afraid of
them because of the potential of violence. Where they feel other religins can
be cut.All I am asking is that ALL chapel programs be staffed.And that they let
in the voulenteers that they turn away saying there understaffed.In your reply
you stated that a chaplin position was advertised, please expidite in hiring one
we acually need 2. Or get a RSA for the weekends (another one and have 2 ) and
one chaplin. All Christmas programs have been canceled at this point because of
staff shortage. This creates a disparity among prisons.

11-17-18                                              Raldyr
         DATE                                              SIGNATURE OF REQUESTER

**Part B—RESPONSE**

# RECEIVED

## NOV 2 7 2018

Administrative Remedy Section
Federal Bureau of Prisons

_____                          _____
         DATE                                              GENERAL COUNSEL

**ORIGINAL: RETURN TO INMATE**                    CASE NUMBER: _947 872 -A1_

**Part C—RECEIPT**                                      CASE NUMBER: _____

Return to: _____    _____    _____    _____
         LAST NAME, FIRST, MIDDLE INITIAL            REG. NO.            UNIT            INSTITUTION
SUBJECT: _____

_____                          _____
         DATE                                              SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL            BP-231(13)
                                                                                                                    APRIL 1982
USP LVN

**Administrative Remedy No. 947872-A1**
**Part B - Response**


This is in response to your Central Office Administrative Remedy Appeal wherein you claim senior management is intentionally understaffing the Chaplaincy Services Department by not hiring staff and turning away volunteers. For relief, you request the hiring of staff be expedited and volunteers be allowed to assist with the coverage of chapel programs/activities.

We have reviewed the documentation related to your appeal and concur with the manner in which the Warden and Regional Director addressed your concerns. Program Statement 5360.09, CN-1, Religious Beliefs and Practices states the Bureau of Prisons provides inmates of all faith groups with reasonable and equitable opportunities to pursue religious beliefs and practices, consistent with the security and orderly running of the institution and budgetary constraints. Our review revealed the institution's Chaplaincy Services staff has worked diligently to provide you the ability to adhere to the tenets of your faith and ensure they are upheld and facilitated to the maximum extent possible. Due to unforeseen circumstances, the Chaplaincy Services Department has experienced a decrease in staffing. Based on the aforementioned, Chaplaincy Services staff were only able to accommodate each faith group with one hour of religious activities on the weekly schedule. This option was determined to be the least restrictive alternative to ensure all faith groups have fair and equitable access to religious accommodations.

Since the filing of this appeal, the Supervisory Chaplain has returned from military leave and Sunday services/activities are being returned to the activities schedule. According to the Religious Services Activities schedule, the Protestant faith group is currently accommodated with up to four hours of volunteer led programs/studies. We encourage you to continue to work with Chaplaincy staff regarding your religious needs.

Accordingly, this response is for informational purposes only.


_3|7|19_____          _TC_____
Date                          Ian Connors, Administrator
                              National Inmate Appeals

APR - 4 2019

Case: 2:20-cv-00207-LPR-JTR    Document #: 53-0    Filed: 06/28/2021    Page

**U.S. Department of Justice**    **Central Office Administrative Remedy Appeal**

Federal Bureau of Prisons

*Exhibit 7*

---

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-DIR-9 and BP-DIR-10, including any attachments must be submitted with this appeal.

From: **Jennings Randal G**           **21384-045**      **WC**      **Forrest City AR**
      LAST NAME, FIRST, MIDDLE INITIAL           REG. NO.      UNIT      INSTITUTION

**Part A—REASON FOR APPEAL** Senior management is intentionally understaffing the chapel. Right now we have 0 chaplins here.Ther e is only 1 at the medium to do all 3 plac We only can have an hour time for service and that is during mainline. They hired 1 RSA but then she refuses to work on the weekends so now the Christians haveno Service on Sundays. But the Muslem services are never missed.This is discriminati than the AW blames it on President Trump.(see bp 10)They have closed with no service Many days over 100 in 6 months.I have documents and witness statements to back it.These days were never made up.We need 2 full time chaplins and a Rsa willing to work weekends so we are not denied our constitutional rights of religi and descriminated against as the muslems never miss because staff are afraid of them because of the potential of violence. Where they feel other religins can be cut.All I am asking is that ALL chapel programs be staffed.And that they let in the voulenteers that they turn away saying there understaffed.In your reply you stated that a chaplin position was advertised, please expidite in hiring one we acually need 2. Or get a RSA for the weekends (another one and have 2 ) and one chaplin. All Christmas programs have been cancled at this point because of staff shortage. This creates a disparity among prisons.

**11-17-18**
    DATE                                      SIGNATURE OF REQUESTER

**Part B—RESPONSE**

RECEIVED

NOV 27 2018

Administrative Remedy Section
Federal Bureau of Prisons

---

    DATE                                      GENERAL COUNSEL

ORIGINAL: RETURN TO INMATE                  CASE NUMBER: **947872-A1**

**Part C—RECEIPT**

                                                  CASE NUMBER: _____

Return to: _____
    LAST NAME, FIRST, MIDDLE INITIAL          REG. NO          UNIT          INSTITUTION

SUBJECT: _____

    DATE        SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL    BP-231(13)
                                                              APRIL 1982
USP LVN

EXHIBIT 7

**Administrative Remedy No. 947872-A1**
**Part B - Response**

This is in response to your Central Office Administrative Remedy Appeal wherein you claim senior management is intentionally understaffing the Chaplaincy Services Department by not hiring staff and turning away volunteers. For relief, you request the hiring of staff be expedited and volunteers be allowed to assist with the coverage of chapel programs/activities.

We have reviewed the documentation related to your appeal and concur with the manner in which the Warden and Regional Director addressed your concerns. Program Statement 5360.09, CN-1, Religious Beliefs and Practices states the Bureau of Prisons provides inmates of all faith groups with reasonable and equitable opportunities to pursue religious beliefs and practices, consistent with the security and orderly running of the institution and budgetary constraints. Our review revealed the institution's Chaplaincy Services staff has worked diligently to provide you the ability to adhere to the tenets of your faith and ensure they are upheld and facilitated to the maximum extent possible. Due to unforeseen circumstances, the Chaplaincy Services Department has experienced a decrease in staffing. Based on the aforementioned, Chaplaincy Services staff were only able to accommodate each faith group with one hour of religious activities on the weekly schedule. This option was determined to be the least restrictive alternative to ensure all faith groups have fair and equitable access to religious accommodations.

Since the filing of this appeal, the Supervisory Chaplain has returned from military leave and Sunday services/activities are being returned to the activities schedule. According to the Religious Services Activities schedule, the Protestant faith group is currently accommodated with up to four hours of volunteer led programs/studies. We encourage you to continue to work with Chaplaincy staff regarding your religious needs.

Accordingly, this response is for informational purposes only.


_____          _____
Date                                 Ian Connors, Administrator
                                     National Inmate Appeals

APR - 4 2019

Exhibit 8

RANDAL G JENNINGS, 21384-045
FORREST CITY FCI     UNT: WYNNE U     QTR: W11-143L
P.O. BOX 7000
FORREST CITY,   AR 72336


received
3-17-21

U.S. Department of Justice

Central Office Administrative Remedy Appeal

Federal Bureau of Prisons

Type or use ball–point pen.  If attachments are needed, submit four copies.  One copy each of the completed BP–DIR–9 and BP–DIR–10, including any attachments must be submitted with this appeal.

From: __Jennings Randal  g__    __21384-045__    __WC__    __Forrest City Low__
      LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

**Part A—REASON FOR APPEAL** The piano has not been fixed for 12 years. There are no batteries so none of the acustic guitars will work. And the drum head and H.Hat has been broke for years. My faith believes in musical worship to GOD. This can not be done without instruments. There are many bible verses that show musical worship.Psalms 150 for one. I explained the problem to Mr Johnson and he said get him a list  of needed items and he would get them. I did and he kept putting it off then blamed his RSA . Truth is he lied to me like he does so many others. We have missed worship more than half the Sundays this year. This has been going on for 3 years.My constitutional rights are being violated and this needs to go to Court. All I ever asked for was equipment every other facility has. Yet Mr Johnson will not even request funds for anything and does not care if the chapel even opens.I want to worship God with instruments. In the last 3 years he has got us nothing while the medium where his office is has gotten drum heads a new PA system, electric amps and electric guitars.

__5-8-2020__
DATE

_(signature)_
SIGNATURE OF REQUESTER

**Part B—RESPONSE**

RECEIVED
OCT 23 2020
Administrative Remedy Section
Federal Bureau of Prisons

RECEIVED
MAY 27 2020
Administrative...
Federal Bureau...

_____    DATE

ORIGINAL: RETURN TO INMATE

GENERAL COUNSEL

CASE NUMBER: _1005818 AZ_

**Part C—RECEIPT**

CASE NUMBER: _____

Return to: _____
           LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

SUBJECT: _____

_____    DATE

SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

**Administrative Remedy No. 1005818-A2**
**Part B - Response**


This is in response to your Central Office Administrative Remedy Appeal wherein you allege over half of your worship services have been cancelled within the last year. You further complain that there are musical instruments in need of repair or replacement. For relief, you request access to religious programs and new musical instruments.

Following our review, we find your complaint is repetitive to Central Office Administrative Remedy Appeals 1010595-A1, for which we previously provided a response. That is, we do not find the appeals materially or substantively different and, as such, we refer you to that response, rather than elaborating further with like conclusions.

You are advised Chaplaincy Services staff at your institution have determined the musical instruments are sufficient for usage for the weekly Protestant Service and no additional musical equipment will be purchased at this time. We encourage you to work with staff at the local level to address any other religious needs you may have, to include future repairs or replacement of instruments once the institution returns to normal operations.

Accordingly, this response is provided for informational purposes only.


_____
Date

_____
Ian Connors, Administrator
National Inmate Appeals

Exhibit 8

**FEDERAL CORRECTIONAL COMPLEX (LOW), FORREST CITY, AR**
**PART B-RESPONSE TO REQUEST FOR ADMINISTRATIVE REMEDY**
**(1005818-F1)**

This is in response to your Request for Administrative Remedy received on January 22, 2020, concerning the purchasing of instruments and other equipment for Religious Services.

For relief, you request the religious services department make musical equipment purchases.

A review of this matter revealed the inmate submitted a hand written statement requesting specific resources for the chapel musical instrumentation. Chaplaincy staff reviewed the request and found the musical equipment to be adequate and sufficient for usage for the weekly Protestant Service. No additional musical equipment will be purchased at this time. We have reviewed documentation relevant to your complaint and, based on our findings, it has been determined the issues raised in this appeal are similar in nature to those already raised and addressed in the Request for Administrative Remedy Appeal No. 893447-F1.

Based on the above, this response to your Request for Administrative Remedy, is for informational purposes.

If you are not satisfied with this decision, you may appeal to the Regional Director at Federal Bureau of Prisons, South Central Regional Office, 344 Marine Forces Drive, Grand Prairie, Texas, 75051. Your appeal must be received in the South Central Regional Office within 20 days of this response.

_____          ___3/2/20_____
DeWayne Hendrix                          Date
Complex Warden

Exhibit 9

RANDAL G JENNINGS, 21384-045
FORREST CITY FCI     UNT: WYNNE U     QTR: W11-136L
P.O. BOX 7000
FORREST CITY,  AR 72336

SEP -6 2018

**Administrative Remedy No. 963364-A2**
**Part B - Response**

This is in response to your Central Office Administrative Remedy Appeal, wherein you allege the Chaplaincy Services Department at FCI Forrest City is under staffed which has caused a decrease in certain religious programs, activities, access to the Chapel, and volunteer participation.  For relief, you request additional staff for religious services, and the reinstatement of religious programs that were eliminated.

We have reviewed documentation relevant to your appeal and, based on the information gathered, concur with the manner in which the Warden and Regional Director addressed your concerns. Program Statement 5360.09, <u>Religious Beliefs and Practices</u> states the Bureau of Prisons provides inmates of all faith groups with reasonable and equitable opportunities to pursue religious beliefs and practices, within the constraints of budgetary limitations and consistent with the security and orderly running of the institution and the Bureau of Prisons. As indicated in the lower level responses to this appeal, the concerns you expressed were adequately addressed and the responses were in accordance with the above stated policy.  You have not provided, nor did we find any evidence to support your claim that your participation in the tenets of your religion were hindered by FCI Forrest City Chaplaincy Services staff.

We encourage you to continue working with institution Chaplaincy Services staff to address any additional needs or concerns you may have.

Accordingly, this response is for informational purposes only.

_____
Date

_____
Ian Connors, Administrator
National Inmate Appeals

U.S. DEPARTMENT OF JUSTICE
Federal Bureau of Prisons

**REQUEST FOR ADMINISTRATIVE REMEDY**

exhibit 10

*Type or use ball–point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

| From: Jennings Randal g | 21384-045 | WB | Forrest City Low |
|---|---|---|---|
| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A– INMATE REQUEST** I was lied to 3x by Mr T Johnson.When I wrote a BP8 about the problem instead of trying to resolve it,he shut down the very program the Bp8 referenced.He shut it down within 5 minutes of sending the Bp8 back.He then told staff, who told inmates it was because of him having to respond to a bp.This was done to "chill a person from complaining about problems" a direct violation of the First Amendment rights,and the 8th Amendment.This started as a small easily fixabl< issue,but by retaliation and violating constitutional rights,also the fact that temp closing a program shows how much Mr Johnson cares about his programs.Yet,BOP is now asking congress for more funding for programs,These Are important programs but the staff have to acually care about them for them to work.I ask as a resoluti< the US Dept of Justice investigate the funding and running of the chapel programs. And stop retaliation and the denial of constitutional rights when Bp's are filed. And stop the retaliatory "temporary closing" of the chapel library.And use the funding designated to the low for the low, not medium.;

9-11-17

_____
DATE

_____
SIGNATURE OF REQUESTER

**Part B– RESPONSE**

RECEIVED
SEP 27 2017
BY: 9/27/17

_____
DATE

_____
WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

**ORIGINAL: RETURN TO INMATE**

CASE NUMBER: 1106914F

CASE NUMBER: _____

**Part C– RECEIPT**

Return to: _____

| LAST NAME, FIRST, MIDDLE INITIAL | REG NO. | UNIT | INSTITUTION |
|---|---|---|---|

SUBJECT: _____

_____
DATE

_____
RECIPIENT'S SIGNATURE (STAFF MEMBER)

BP–229(13)
APRIL 1982

USP LVN

Exhibit 11

RANDAL G JENNINGS, 21384-045
FORREST CITY FCI    UNT: WYNNE U    QTR: W11-136L
P.O. BOX 7000
FORREST CITY,    AR 72336

JUL 25 2019

U.S. Department of Justice

**Central Office Administrative Remedy Appeal**

Federal Bureau of Prisons

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-DIR-9 and BP-DIR-10, including any attachments must be submitted with this appeal.

From: Jennings Randal G    21384-045    WC    Forrest City Low

| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A—REASON FOR APPEAL** Library ASOE Meyers threw out 36 carts of books, These were not extra as our library is now empty with no books.(over 65 empty shelves). The fact is that staff did not want to do the work of sorting them. They threw out bibles but no korans and they made jokes saying the inmates who were forced to throw away the bibles could ask God for forgivness later. They did not even follow policy as they only let inmates have 5 books total. Not 10 as policy states. No bible should ever be thrown out this desicrates religion. They do not dare throw out korans because there afaid of the muslims. I ask that the same courtesy be extended to Christians.

3-17-19
DATE

SIGNATURE OF REQUESTER

**Part B—RESPONSE**

RECEIVED

JUN 0 5 2019

Administrative Remedy Section
Federal Bureau of Prisons

REC

MAR 2 7 2019

Administrative Remedy Section
Federal Bureau of Prisons

DATE

ORIGINAL: RETURN TO INMATE

**Part C—RECEIPT**

Return to: _____
LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

SUBJECT: _____

GENERAL COUNSEL

CASE NUMBER: 962079

CASE NUMBER: 926079-A1

962079-A1,A2

DATE    SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL    BP-231(13)
APRIL 1982

USP LVN    Printed on Recycled Paper

**Administrative Remedy No. 962079-A2**
**Part B - Response**

This is in response to your Central Office Administrative Remedy Appeal where you claim Education Department staff at FCI Forrest City unjustly disposed of several donated books and Bibles. You contend policy was not followed and feel a Bible should be treated just like a Koran, and never thrown away. You request the Bibles that were taken be returned and for Christian inmates to be extended the same courtesies as other religions.

The Warden and Regional Director adequately addressed your complaint and we concur with the responses provided. You were advised regarding the collection and disposition of excess donated reading materials. There is no indication policy was not followed regarding this matter nor is there evidence of staff malfeasance.

Accordingly, your appeal is denied.


Date

Ian Connors, Administrator
National Inmate Appeals

Exhibit 12

RANDAL G JENNINGS, 21384-045
FORREST CITY FCI     UNT: WYNNE U     QTR: W11-143L
P.O. BOX 7000
FORREST CITY,  AR 72336


received
1-14-21

**Administrative Remedy No. 1010595-A1**
**Part B - Response**

This is in response to your Central Office Administrative Remedy Appeal wherein you allege there were two Christian services that were cancelled in January of 2020. You further contend the chapel library has been permanently shut down. Lastly, you complain that there are musical instruments that require repair or replacement. For relief, you request access to religious programs and/or materials.

We have reviewed the documentation related to your appeal and concur with the manner in which the Warden and Regional Director addressed your concerns. Program Statement 5360.09, CN-1, Religious Beliefs and Practices states the Bureau of Prisons provides inmates of all faith groups with reasonable and equitable opportunities to pursue religious beliefs and practices, consistent with the security and orderly running of the institution and budgetary constraints. Our review revealed the institution's Chaplaincy Services staff has worked diligently to provide you the ability to adhere to the tenets of your faith and ensure they are upheld and facilitated to the maximum extent possible. When unforeseen circumstances arise in a Correctional environment, staff are expected to take appropriate action to maintain the security and orderly running of the institution. Unfortunately, this may result in a disruption, suspension and/or cancellation of inmate activities.

Due to the COVID-19 Pandemic, the Warden has implemented a modified lockdown to meet social distancing requirements and to keep inmates from comingling with other inmates assigned to other housing units. Prior to the COVID-19 Pandemic, the Chaplaincy Department at your institution experienced a decrease in staffing which resulted in some of the religious activities being cancelled.

We encourage you to work with the Chaplaincy Services Department staff to address any other religious needs you may have, to include future repairs or replacement of instruments once the institution returns to normal operations.

Accordingly, this response is provided for informational purposes only.

_____
Date

_____
Ian Connors, Administrator
National Inmate Appeals

Exhibit 13

REJECTION NOTICE - ADMINISTRATIVE REMEDY

*Have Jennings go to a 10. Being it was rejected in September, I would not be able to process it, being its untimely.*

*-Smith*

DATE: SEPTEMBER 30, 2021

*Alcon, Acting Executive Assist.*

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      FORREST CITY FCI

TO  : RANDAL G JENNINGS, 21384-045
      FORREST CITY FCI    UNT: WYNNE U    QTR: W10-125L
      P.O. BOX 7000
      FORREST CITY,  AR 72336


FOR THE REASONS LISTED BELOW, THIS ADMINISTRATIVE REMEDY REQUEST
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.


REMEDY ID      : 1096108-F1     ADMINISTRATIVE REMEDY REQUEST
DATE RECEIVED  : SEPTEMBER 30, 2021
SUBJECT 1      : OTHER COMPLAINT AGAINST STAFF
SUBJECT 2      :
INCIDENT RPT NO:

REJECT REASON 1: YOU MUST PROVIDE MORE SPECIFIC INFORMATION (E.G. CASE NO.)
                ABOUT YOUR REQUEST/APPEAL SO THAT IT MAY BE CONSIDERED.
         *Cannot get more specific than this typed version.*
REJECT REASON 2: YOU MAY RESUBMIT YOUR REQUEST IN PROPER FORM WITHIN
                5 DAYS OF THE DATE OF THIS REJECTION NOTICE.

*Received by Wynne Unit Team on 10/14/21*

*P. Banks*

*Received again by Unit Team 12/8/21*
*I/m Received 12/8/21*

*Given to inmate.*


received
12-21-21

received
10-7-2021

SUBJECT                                    RECIPIENT'S SIGNATURE (STAFF MEMBER)        BP-229
                                                                                       APRIL
                                                                                       APRIL 198



**U.S. Department of Justice**

**Federal Bureau of Prisons**

*Federal Correctional Complex (Low)*
*Forrest City, AR 72335*

August 31, 2021

MEMORANDUM FOR INMATE POPULATION WYNNE UPPER UNIT

FROM:          P. Banks, Unit Manager

SUBJECT:       Notification of Wynne Upper Unit Sanctions


On August 31, 2021, from 7:30 a.m. until approximately 3:00 p.m., a shakedown was conducted in Wynne Unit here at FCC Forrest City Low. During this shakedown not only were the Units found to be in unsanitary conditions and cluttered with excessive nuisance, but staff also discovered large quantities of homemade intoxicants (approximately 130 gallons), cell phones, cell phone charges, drugs, and drug paraphernal. These issues are unacceptable and pose a direct threat to the safety and orderly running of the institution and will not be tolerated. Effective with the issuance of this bulletin, the following privileges will be suspended for the unsanitary conditions of Wynne Unit as well as the discovery of such contraband.

-     Phone restrictions until 9/8/2021.
-     Television viewing privileges until 9/8/2021.



CC: Eric Kessel
C. H. Walker, Acting Captain

EXHIBIT 15

**FEDERAL CORRECTIONAL COMPLEX, FORREST CITY, AR**
**PART B-RESPONSE TO REQUEST FOR ADMINISTRATIVE REMEDY**
**(1001193-F1)**

This is in response to your Request for Administrative Remedy received December 26, 2019, in which you state that there is the presence of "Black Mold" in Wynne Bravo and Wynne Charlie. It can be seen on the pipes and ceiling. It effects your health and the health of others. For relief, you request that an air check be done and the situation fixed. *They intentionally tested the wrong unit were in WC*

A review of your request revealed that on December 12, 2018, air samples were taken in the WB common area with no elevated readings. Then on December 17, 2019, samples were taken of all areas where water intrusion was noted and ceilings were open. There were several elevated areas within Wynne Unit, to include office space and common areas. The readings were elevated for Penicillium/Aspergillus which is common everywhere. This fungi is normally found in the air in small amounts in outdoor air and grows on nearly everything. This type of fungi grows well on wet wallboard, wood, food, leather, etc. It is also able to grow on many substrates indoors. While this mold may be black in color, it is not Stachybotrys. Facilities has ensured the Environmental and Safety Compliance Department that the water intrusion has been addressed and with that we sprayed these areas with chemicals designed to eliminate the fungi in the crawl spaces that were absent ceilings. It must be noted that a majority of this interior microbiological fungi can be taken care of with daily cleaning which is covered under the FCC Forrest City Housekeeping Plan.

Based on the above, this response is for informational purposes only.

If you are not satisfied with this decision, you may appeal to the Regional Director at Federal Bureau of Prisons, South Central Regional Office, 344 Marine Forces Drive, Grand Prairie, TX 75051. Your appeal must be received in the South Central Regional Office within 20 days of this response.

_____                    1/10/25
Dewayne Hendrix, Complex Warden                     Date

exhibit 16

RANDAL G JENNINGS, 21384-045
FORREST CITY FCI    UNT: WYNNE U    QTR: W11-136L
P.O. BOX 7000
FORREST CITY,   AR 72336

U.S. Department of Justice

Federal Bureau of Prisons

**Central Office Administrative Remedy Appeal**

---

Type or use ball–point pen.  If attachments are needed, submit four copies.  One copy each of the completed BP-DIR-9 and BP-DIR-10, including any attachments must be submitted with this appeal.

From: Jennings Randal G      21384-045      WC      Forrest City low

      LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION

**Part A—REASON FOR APPEAL** We did not have hot water for showers or cleaning for over 7 months.This was cruel and unusual punishment which violates the 8th Amendment Hr Hess kept saying it would be fixed in 2 weeks and joking the whole time. The "emp unit" they tried did not work either and they only had 2 luke warm showers or hundreds of inmates.The air temp in the unit got into the high 90s and they would not turn it down. The building should have been closed for the 7 months instead they treated us like animals, and were delibertly indifferent to our health needs.

3-17-19

DATE            SIGNATURE OF REQUESTER

**Part B—RESPONSE**

RECEIVED

MAR 2 7 2019

Administrative Remedy Section
Federal Bureau of Prisons

RECEIVED

JUN 3 2019

Administrative Remedy Section
Federal Bureau of Prisons

---

DATE            GENERAL COUNSEL

ORIGINAL: RETURN TO INMATE      CASE NUMBER: 963368-A1

**Part C—RECEIPT**            CASE NUMBER: 963363-A1

Return to: _____

     LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION

SUBJECT: _____

---

DATE            SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL      BP-231(13)
                                           APRIL 1982

USP LVN      Printed on Recycled Paper

**Administrative Remedy No. 963363-A2**
**Part B - Response**

This is in response to your Central Office Administrative Remedy Appeal where you state your housing unit at FCI Forrest City did not have hot water for showers or cleaning for seven months, resulting in a skin condition.  You also claim the heat was left on for two weeks resulting in heat exhaustion.  You allege deliberate indifference and cruel and unusual punishment.  You request a new maintenance department to keep equipment running and to be awarded damages.

The Warden and Regional Director adequately addressed your complaint and we concur with the responses provided.  The circumstances surrounding a lack of hot water and a high air temperature in your housing unit was reviewed and explained to you in detail.  These situations were temporary and remedied as quickly as feasible.  There is no indication the hot water and temperature issues in your housing unit occurred intentionally nor is there evidence of staff malfeasance.

If you are experiencing medical issues, you have access to the Health Services Department.  As to your request for damages, the Regional response referred you to the appropriate avenue to submit a claim.

Accordingly, your appeal is denied.

_____6 25 19_____
Date

_____
Ian Connors, Administrator
National Inmate Appeals

EXHIBIT 7-7

# *DOCUMENTATION OF INFORMAL RESOLUTION ATTEMPT*

Bureau of Prisons Program Statement No. 1330.13, **Administrative Remedy Program**, (December 22, 1995), requires, in most cases, that inmates attempt informal resolution of grievances prior to filing a formal written complaint.  This form shall be used to document your efforts towards informally resolving your grievance.

Inmate=s Name: Randal Jennings          Date: 8-31-21 -

Register Number: 21384-045          Unit: WC.

Specific Complaint and Requested Relief: We Are being denied Phone and Computers to talk to our families who are Sick with Covid This is MASS punishment which is against policy and illegal As we did nothing wrong. After The Shakedown A memo was Issued stating we were being mass Punished and Noone would not answer, But enforced the mass punishment, This violates Contitutonal rights from punishent without due process 8th Amendment.

Efforts Made By Inmate to Informally Resolve Grievance (be specific): Talked to CO LT refused to come to Unit.

_____

_____

_____

_____

Counselor=s Comments: Administation has authority to restrict privileges ancering institutinal security All lines of communication were not restricted

_____

Correctional Counselor=s Review Date    9/4/21          Unit Mangers Review Date

DATE BP-9 was ISSUED  9/10/21

exhibit 18

RANDAL G JENNINGS, 21384-045
FORREST CITY FCI     UNT: WYNNE U     QTR: K01-005L
P.O. BOX 7000
FORREST CITY,   AR 72336

**U.S. Department of Justice**                              **Central Office Administrative Remedy Appeal**

Federal Bureau of Prisons

---

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP–DIR–9 and BP–DIR–10, including any attachments must be submitted with this appeal.

From: _Jennings Randal G_     _21384-045_     _WC_     _Forrest City_
           LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION

**Part A—REASON FOR APPEAL**   We have black mold and roof is still leaking which causes the mold in WC. There is a deliberate indifference to our health. Which resulted in health problems. See 9 and BP10 for more information

_3-29-20_
DATE                                        _Rodd_                SIGNATURE OF REQUESTER

**Part B—RESPONSE**

RECEIVED
APR 2 1 2020
Administrative Remedy Section
Federal Bureau of Prisons

---

         DATE                                                    GENERAL COUNSEL

**ORIGINAL: RETURN TO INMATE**              CASE NUMBER: _100 1193-A1_

---

**Part C—RECEIPT**

                                                  CASE NUMBER: _____

Return to: _____
             LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.        UNIT        INSTITUTION

SUBJECT: _____

---

         DATE                          SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL        BP–231(13)
USP LVN                                                                    APRIL 1982

**Administrative Remedy No. 1001193-A1**
**Part B - Response**

This is in response to your Central Office Administrative Remedy Appeal where you allege deliberate indifference to your health at FCI Forrest City. You state there is black mold in the unit causing health issues and the roof leaks. You request an outside contractor fix the leaking roof and clean the hazardous mold.

The Warden and Regional Director adequately addressed your complaint and we concur with the responses you were provided. The Bureau of Prisons provides all inmates with a safe, secure and humane living environment. Safety and environmental matters are properly addressed as soon as staff become aware of a situation. As indicated, the prior water intrusion and fungi in the crawl spaces were thoroughly addressed. In addition, the current Housekeeping Plan in place at FCI Forrest City continues to properly manage these and other housekeeping matters.

If you have a medical concern, you have access to the Health Services Department for evaluation and treatment, if deemed necessary.

Accordingly, your appeal is denied.


_____6|25|20_____
Date

_____
Ian Connors, Administrator
National Inmate Appeals RME

exhibit 19

2

Attachment A

### DOCUMENTATION OF INFORMAL RESOLUTION ATTEMPT

Bureau of Prisons Program Statement No. 1330.18, **Administrative**
**Remedy Program**, January 6, 2014, requires, in most cases, that
Inmates attempt informal resolution of grievances prior to filing a
Formal written complaint. This form shall be used to document your
efforts towards informally resolving your grievance.

Inmate's Name: Randal Jennings                    Date: _____

Register Number: 21384 045        Unit: V7 Tck.

Specific Complaint (include date) and Requested Relief: STAFF
was negligent for allowing a bus into general
population without the 14 day wait. Causing me
to get Covid-19.

_____

_____

Efforts Made By Inmate to Informally Resolve Grievance (be
specific): Talked to staff

_____

_____

_____

Counselor's Comments: No response proceed w/
remedy process

_____

_____

PM          7-7-20              MO        7-7-20
**Correctional Counselor's Review Date**    **Unit Manager's Review Date**

Exhibit 20

FEDERAL CORRECTIONAL COMPLEX, FORREST CITY, AR
PART B-RESPONSE TO REQUEST FOR ADMINISTRATIVE REMEDY
(1015142-F1)

This is in response to your Request for Administrative Remedy
received April 21, 2020, in which you claim the FCC Forrest City-Low
is not following CDC guidelines for quarantining individual units.

For relief, you request that inmates not be allowed to come from
Wynne Delta to Wynne Charlie.

A review of this matter revealed that all staff have been advised to
keep center hallway doors locked and not allow inmates from one unit
to intermingle with another unit.

Based on the above, this response is for informational purposes only.

If you are not satisfied with this decision, you may appeal to the
Regional Director at Federal Bureau of Prisons, South Central
Regional Office, 344 Marine Forces Drive, Grand Prairie, Texas 75051.
Your appeal must be received in the South Central Regional Office
within 20 days of this response.

_____          4/23/2020
DeWayne Hendrix                           Date
Complex Warden

**...ERAL CORRECTIONAL COMPLEX, FORREST CITY, AR**
**...RT B-RESPONSE TO REQUEST FOR ADMINISTRATIVE REMEDY**
**...096116-F1**

This is in response to your Request for Administrative Remedy received September 30, 2021. You state you were denied access to the phone and the computer system. You further state staff violated BOP policy by implementing mass punishment which is against the U.S. Constitution.

A review of your complaint revealed that staff restricted inmate privileges after large amounts of contraband were found in Wynne Unit. The refusal of Wynne Unit inmates to comply with BOP policy as well as posted Unit rules regarding possession of cell phones, homemade intoxicants, drugs, drug paraphernalia, and sanitation, pose a direct threat to both inmates and staff. Therefore, restrictions of inmate privileges may be imposed at any time to ensure the safety, security, and orderly running of the institution.

This response to your request for Administrative Remedy is for informational purposes only.

If you are not satisfied with this decision, you may appeal to the Regional Director at Federal Bureau of Prisons, South Central Regional Office, U.S. Armed Forces Reserve Complex, 344 Marine Forces Drive, Grand Prairie, Texas, 75051. Your appeal must be received in the South Central Regional Office within 20 days of this response.

_E. Kenel_
_____          __11/9/21_____
John P. Yates, Complex Warden          Date

*Exhibit 22*

# DOCUMENTATION OF INFORMAL RESOLUTION ATTEMPT

Bureau of Prisons Program Statement No. 1330.13, <u>Administrative Remedy</u>
<u>Program</u>, (December 22, 1995), requires, in most cases, that inmates
attempt informal resolution of grievances prior to filing a formal
written complaint.  This form shall be used to document your efforts
towards informally resolving your grievance.

Inmate=s Name: Randal Jennings                   Date: 11·11·21

Register Number: 21384-045           Unit: WC.

Specific Complaint and Requested Relief: I Turned in 7 BP8 on 8-31-21
got them back and turned in BP 9's on 9/11/21. I have not received
any back. I believe my Constitutional rights of due process are
being violated on purpose denying my Access to the Courts as BP-9
numbers were never generated. therefore, I dont have proof they were
turned in at a 9 level except copies. The Warden Secretary is not
sending them back. No extension was requested.

Efforts Made By Inmate to Informally Resolve Grievance (be
specific): Talked to Mrs Banks.

_____

_____

_____

_____

Counselor=s Comments: AW secretary had no record. Advised
to resubmit BP 9

_____

_____

_____ 11/16/21          _____ 11/10/21
Correctional Counselor=s Review Date      Unit Manger=s Review Date

DATE BP-9 was ISSUED_____

RANDAL G JENNINGS, 21384-045
FORREST CITY FCI      UNT: WYNNE U     QTR: W11-143L
P.O. BOX 7000
FORREST CITY,   AR 72336

received
6-21-21

**Administrative Remedy No. 1033051-A1**
**Part B - Response**

This is in response to your Central Office Administrative Remedy Appeal where you claim staff were negligent when they released a bus load of inmates into general population after quarantining for only 24 hours.  You make no specific request for relief.

We have reviewed documentation relevant to your appeal and, based on the information gathered', concur with the manner in which the Warden and Regional Director addressed your concerns at the time of your Request for Administrative Remedy and subsequent appeal.  We direct you to the Warden's response where it was explained that the inmates spent a minimum of fourteen days in quarantine at the institution.  You provide no new information which had not been previously considered during your lower level appeals that would compel us to reverse the decisions of the lower levels.

Based on the foregoing, this response is provided for informational purposes.


_____
Date

_____
Ian Connors, Administrator
National Inmate Appeals

U.S. Department of Justice

**Central Office Administrative Remedy Appeal**

Federal Bureau of Prisons

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-DIR-9 and BP-DIR-10, including any attachments must be submitted with this appeal.

| From: | Jennings, Randal G | 21384-045 | WC | FOR |
|---|---|---|---|---|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A—REASON FOR APPEAL**

Staff was negligent for allowing a bus of inmates onto the compound with only quarantining them 24 hours instead of 14 days resulting in a major COVID outbreak. The warden stated they were, but the bus that inmate Stormy and Sterling was on coming from Oklahoma went to the SHU 24 hours then was released into general population. Three other inmates went on to the medium where they tested positive. The difference was they were housed in a cell and inmates here were in a dorm where the infection spread. There are signed affidavits stating they were only quarantined 24 hours. This was AFTER the town hall meeting saying they were going to quarantine every new arrival 24 hours.

12-6-20

DATE

_Radal Jen_

SIGNATURE OF REQUESTER

**Part B—RESPONSE**

RECEIVED

JAN 0 4 2021

Administrative R~~~~~~
Federal Bureau ~

DATE

ORIGINAL: RETURN TO INMATE

GENERAL COUNSEL

CASE NUMBER: 1033057

**Part C—RECEIPT**

CASE NUMBER: _____

Return to: _____

| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |
|---|---|---|---|---|

SUBJECT: _____

DATE

SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

BP-231(13)
APRIL 1982

USP LVN

PRINTED ON RECYCLED PAPER

RANDAL G JENNINGS, 21384-045
FORREST CITY FCI     UNT: WYNNE U     QTR: W11-143L
P.O. BOX 7000
FORREST CITY,  AR 72336

**Administrative Remedy No. 1033040-A1**
**Part B - Response**

This is in response to your Central Office Administrative Remedy Appeal wherein you allege you and 4 other inmates were locked in medical isolation and you were denied medications, medical treatment and your Bible and other property and supplies. You further allege you were placed in a cell with a spider infestation, no hot water and a moldy toilet. You request no specific relief.

We have reviewed documentation relevant to your appeal and, based on our findings, concur with the manner in which the Warden responded to your concerns at the time of your Request for Administrative Remedy and subsequent appeal. Following our review, we find your complaint is repetitive to Central Office Administrative Remedy Appeals 1033043-A1, and 1033044-A1, for which we have previously provided responses. That is, we do not find the appeals materially or substantively different and, as such, we refer you to that response, rather than elaborating further with like conclusions.

Based on the foregoing, we find your appeal repetitive and have closed it as such.

3\12\21
Date

Ian Connors, Administrator
National Inmate Appeals

U.S. Department of Justice

Federal Bureau of Prisons

**Central Office Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-229(13) and BP-230(13), including any attachments must be submitted with this appeal.

From: __Jennings, Randal G__ __21384-045__ __WC__ __FOR__

LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

## Part A - REASON FOR APPEAL

I was singled out and discriminated against. I was locked in medical SHU with 4 other inmates for having COVID, yet at that time, there were over 600 inmates who also had COVID. We were treated like animals. I was denied my medications and my Bible, and we were never seen by an MD the whole time. I was told, to go back to the unit, I would have to have 2 negative tests, yet the 600 others never got a 2nd test. Poynor singled us out, refused to give us shower shoes, ᴍ commissary, radio, clean clothes, medications, books, or a Bible after I kept asking him. We were subjected to ᴋᴋᴍᴉᴋ cruel and unusual punishment of being denied what others ɢᴍᴋ got. We were put in a one-man cell with 3 inmates in a cell. The cell also had a spider infestation and no hot water, and a green mouldy toilet.

__1-6-21__    _Raolf Nʒⁱ_

DATE    SIGNATURE OF REQUESTER

## Part B - RESPONSE

RECEIVED

JAN 2 6 2021

Administrative Remedy Section
Federal Bureau of Prisons

_____    _____
DATE    GENERAL COUNSEL

ORIGINAL: RETURN TO INMATE    CASE NUMBER: _1033040 A1_

## Part C - RECEIPT

CASE NUMBER: _____

Return to: _____
LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

SUBJECT: _____

_____    _____
DATE    SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

UPN LVN    PRINTED ON RECYCLED PAPER    BP-231(13)
JUNE 2002

exhibits 25.

RANDAL G JENNINGS, 21384-045
FORREST CITY FCI     UNT: WYNNE U     QTR: W11-143L
P.O. BOX 7000
FORREST CITY,   AR 72336

U.S. Department of Justice

Federal Bureau of Prisons

**Central Office Administrative Remedy Appeal**

Type or use ball–point pen.  If attachments are needed, submit four copies.  One copy each of the completed BP–DIR–9 and BP–DIR–10, including any attachments must be submitted with this appeal.

From: Jennings, Randal G          21384-045          WC          FOR

LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION

## Part A—REASON FOR APPEAL

I was forced to pack and move my property many times AFTER I had caught and HAD COVID-19.  To force inmates to carry heavy bags and boxes while they cannot breathe is cruel and unusual punishment.  I was then moved from Votec which was for positives to the medical "observation" SHU area where Mr. Poynor treated us like animals.  Putting 3 inmates in an area only big enough for one, and not allowing us a Bible, cup, towel, medications.  This is deliberate indifference to a serious medical need.  They kept us there for 5 days before moving us BACK to Votec while hundreds of other inmates were positive in units but not forced to move or be in a cell.  That is treating inmates differently.  There are many staff and inmate witnesses.

12-6-20

DATE

SIGNATURE OF REQUESTER

## Part B—RESPONSE

RECEIVED

JAN 2 6 2021

Administrative Remedy Section
Federal Bureau of Prisons

DATE

ORIGINAL: RETURN TO INMATE

GENERAL COUNSEL

CASE NUMBER: _1033043·A1_

## Part C—RECEIPT

CASE NUMBER: _____

Return to: _____

LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION

SUBJECT: _____

DATE

SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

Printed on Recycled Paper

BP–231(13)
APRIL 1982

USP LVN

**Administrative Remedy No. 1033043-A1**
**Part B - Response**

This is in response to your Central Office Administrative Remedy Appeal wherein you allege you were forced to pack and move your property several times after testing positive for COVID-19. You allege this is cruel and unusual punishment as you were not permitted the same privileges and supplies as other inmates. For relief, you request the Federal Bureau of Prisons change its policy.

We have reviewed documentation relevant to your appeal and, based on our findings, concur with the manner in which the Warden and Regional Director responded to your concerns at the time of your Request for Administrative Remedy and subsequent appeal. As previously indicated, you were placed in medical isolation subsequent to your positive COVID-19 tests on May 29, 2020, and June 29, 2020. You were allowed to bring your property and you were afforded the same treatment as other inmates placed in medical isolation. These procedures are employed based on relevant science, guidance and clinical indications as recommended by the World Health Organization, the Center for Disease Control, the Office of Personnel Management and the Office of the Vice President. Based on this information, there is no evidence to substantiate your claim of being denied appropriate medical care or that of deliberate indifference.

Considering the foregoing, this response is provided for informational purposes only.

3\12\21
Date

Ian Connors, Administrator
National Inmate Appeals

Exhibits 26

RANDAL G JENNINGS, 21384-045
FORREST CITY FCI     UNT: WYNNE U     QTR: W11-143L
P.O. BOX 7000
FORREST CITY,  AR 72336 -

U.S. Department of Justice

Federal Bureau of Prisons

**Central Office Administrative Remedy Appeal**

ℒ

---

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-229(13) and BP-230(13), including any attachments must be submitted with this appeal.

From: __Jennings, Randal G__          __21384-045__          __WC__          __FOR__
      LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION

**Part A - REASON FOR APPEAL**

Medical isolation is spider infested. Staff (Mr. Poynor, Nurse Phillips) were delibertly indifferent to my health needs. I killed a spider and showed them. They walked off. The bed and mattress and everything was soaking wet. I asked for a rag or towel and was told no. So I was forced to sleep on poison. Whether it was bug spray or cleaning chemical, it is still poison. They refused to do anything about the spider problem even after I showed them bites on my arm which they would not collect sick call for.

__12-8-20__                          __Randal Jin__
DATE                          SIGNATURE OF REQUESTER

**Part B - RESPONSE**

RECEIVED

JAN 0 7 2021

Administrative Remedy Section
Federal Bureau of Prisons

---

DATE                          GENERAL COUNSEL

ORIGINAL: RETURN TO INMATE          CASE NUMBER: __1033044-A1__

**Part C - RECEIPT**

CASE NUMBER: _____

Return to: _____
      LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION

SUBJECT: _____

_____          _____
DATE                          SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

UPN LVN          PRINTED ON RECYCLED PAPER          BP-231(13)
JUNE 2002

Administrative Remedy No. 1033044-A1
Part B - Response

This is in response to your Central Office Administrative Remedy
Appeal wherein you allege you were placed in medical isolation
in a cell that was infested with spiders and staff refused to do
anything about it after showing them you had spider bites.  You
request no specific relief.

We have reviewed documentation relevant to your appeal and,
based on our findings, concur with the manner in which the
Warden and Regional Director responded to your concerns at the
time of your Request for Administrative Remedy and subsequent
appeal.  As such, our succeeding review reveals no reason to
elaborate further with similar conclusions as those which have
already been provided in the previous levels of this appeal.

Considering the foregoing, this response is provided for
informational purposes only.

3 (12\21
Date

Ian Connors, Administrator
National Inmate Appeals

C4R0175 27    5

### DOCUMENTATION OF INFORMAL RESOLUTION ATTEMPT

Bureau of Prisons Program Statement No. 1330.18, **Administrative Remedy Program**, January 6, 2014, requires, in most cases, that Inmates attempt informal resolution of grievances prior to filing a Formal written complaint. This form shall be used to document your efforts towards informally resolving your grievance.

Inmate's Name: Randal Jennings    Date: 7-29-20

Register Number: 21384-045    Unit: Vorek.

Specific Complaint (include date) and Requested Relief: I have Covid 19 yet 3x they have made me pack and carry heavy weight (passing out) for no reason. The cell in medical Isolation has no hot water, black mold, no air. This is intentional infliction of emotional duress. I really think mr Poynor is trying to kill us. He is making the sickest

Efforts Made By Inmate to Informally Resolve Grievance (be specific): Talked to Staff

inmates pack and carry all of there stuff when they can not get a breath because of Covid 19 They did this 4 times now.

Counselor's Comments: No response proceed w/ remedy process

RB    7-7-20
**Correctional Counselor's Review Date**

Mg    7-7-20
**Unit Manager's Review Date**

EXHIBITS 28

3

**FEDERAL CORRECTIONAL COMPLEX MEDIUM, FORREST CITY, AR**
**PART B-RESPONSE TO REQUEST FOR ADMINISTRATIVE REMEDY**
**(1033050-F2)**

This is in response to your Request for Administrative Remedy received on July 28, 2020, you state you received your blood pressure medication late and received a Bible a day late.

For relief, you request the Assistant Health Services Administrator be removed from any decisions over your care.

While being placed in isolation, you were allowed to bring your property.  Inmates were given the option to take whatever items they needed with them in to isolation.  If you did not bring any items, such as medications and a Bible, that was a decision made by you.  Unit team was notified of your placement in isolation.  You were afforded the same treatment as other inmates placed in medical isolation.

You were in isolation May 29, 2020 to July 31, 2020.  You tested negative on May 13, 2020.  You then tested positive on May 29, 2020 and June 29, 2020.  Your movement history shows you were not in the Special Housing Unit as you state in your complaint.

Your blood pressure medication was filled at a 30 day supply each on June 1, 2020, June 29, 2020 and July 27, 2020.

Based on the above, this response is for informational purposes only.

If you are not satisfied with this decision, you may appeal to the Regional Director at Federal Bureau of Prisons, South Central Regional Office, 344 Marine Forces Drive, Grand Prairie, Texas, 75051.  Your appeal must be received in the South Central Regional Office within 20 days of this response.

_____       _____
DeWayne Hendrix                         8/21/20
Complex Warden                          Date

Exhibits 29

**FEDERAL CORRECTIONAL COMPLEX MEDIUM, FORREST CITY, AR**
**PART B-RESPONSE TO REQUEST FOR ADMINISTRATIVE REMEDY**
**(1033044-F2)**

This is in response to your Request for Administrative Remedy received on July 29, 2020, in which you state were moved to a spider infested cell that was wet with bug spray on July 29, 2020. For this reason according to this time frame, this BP-9 is denied due to not going through the appropriate process.

However, your mattress was damp due to being disinfected, not from bug spray. There is no sick call slip from you or any other record in your medical chart to reflect having a spider bite during this time.

If you are not satisfied with this decision, you may appeal to the Regional Director at Federal Bureau of Prisons, South Central Regional Office, 344 Marine Forces Drive, Grand Prairie, Texas, 75051. Your appeal must be received in the South Central Regional Office within 20 days of this response.

_DeWayne Hendrix_                                          _8/20/20_
DeWayne Hendrix                                          Date
Complex Warden

Exhibits 30

# DOCUMENTATION OF INFORMAL RESOLUTION ATTEMPT

Bureau of Prisons Program Statement No. 1330.13, Administrative Remedy Program, (December 22, 1995), requires, in most cases, that inmates attempt informal resolution of grievances prior to filing a formal written complaint. This form shall be used to document your efforts towards informally resolving your grievance.

Inmate=s Name: Randal Jennings         Date: 7-29-20

Register Number: 21384-045        Unit: medical Isolation

Specific Complaint and Requested Relief: Mr fonyor Told me to get what I needed. I forgot to get medicine out of my personal belongings. He refused me medications, then put other inmates Items & property on top of mine Smashing all my property and mixing it with other Inmates. For no reason This was retaliation as I had explained, he was Violating Amendment rights. I did not have a cup for water or Clean clothes.

Efforts Made By Inmate to Informally Resolve Grievance (be specific): told STAFF

I was denied Medication and my bible. nor have I Seen a dr Thurs F S S monday 4 days, no tems no monitoring.

Counselor=s Comments: No response from appropriate staff. proceed w/ remedy process

_____M4_____        7-7-20        _____M2_____        7-7-20
Correctional Counselor=s Review Date        Unit Manger=s Review Date

DATE BP-9 was ISSUED_____

Exhibit 31

FEDERAL CORRECTIONAL COMPLEX MEDIUM, FORREST CITY, AR
PART B-RESPONSE TO REQUEST FOR ADMINISTRATIVE REMEDY
(1033049-F2)

This is in response to your Request for Administrative Remedy
received on July 28, 2020, in which you state you were not treated
fairly while in medical isolation.

For relief, you request the Assistant Health Services Administrator
be removed from any decisions over your care.

While being placed in isolation, you were allowed to bring your
property. Inmates were given the option to take whatever items they
needed with them in to isolation.  You were afforded the same
treatment as other inmates placed in medical isolation.  You were
placed in a three man cell, with two other inmates.

There is no movement history of you in Special Housing Unit during
this time as stated in your complaint.

Based on the above, this response is for informational purposes only.

If you are not satisfied with this decision, you may appeal to the
Regional Director at Federal Bureau of Prisons, South Central
Regional Office, 344 Marine Forces Drive, Grand Prairie, Texas,
75051.  Your appeal must be received in the South Central Regional
Office within 20 days of this response.

_DeWayne Hendrix_                          _8/20/20_
DeWayne Hendrix                            Date
Complex Warden

Exhibit 32                                                                    2

FEDERAL CORRECTIONAL COMPLEX MEDIUM, FORREST CITY, AR
PART B-RESPONSE TO REQUEST FOR ADMINISTRATIVE REMEDY
(1033051-F2)

This is in response to your Request for Administrative Remedy
received on July 28, 2020, in which you state you were subjected to
COVID-19 due to the Bureau of Prisons allowing a bus of new inmates
on the compound after being in quarantine for 24 hours.

For relief, you request policy to be followed.

Inmates were moved to different areas according the Federal Bureau
of Prisons Regional Office and CDC recommendations.  All quarantine
inmates, to include new intakes, spent a minimum of 14 days in
quarantine at this institution.

Based on the above, this response is for informational purposes only.

If you are not satisfied with this decision, you may appeal to the
Regional Director at Federal Bureau of Prisons, South Central
Regional Office, 344 Marine Forces Drive, Grand Prairie, Texas,
75051.  Your appeal must be received in the South Central Regional
Office within 20 days of this response.

_____          8/20/20
DeWayne Hendrix                           Date
Complex Warden

FEDERAL CORRECTIONAL COMPLEX MEDIUM, FORREST CITY, AR
PART B-RESPONSE TO REQUEST FOR ADMINISTRATIVE REMEDY
(1033040-F2)

This is in response to your Request for Administrative Remedy received on July 29, 2020, you state were punished for having COVID-19.

For relief, you request all inmates are treated the same.

While being placed in isolation, you were allowed to bring your property. Inmates were given the option to take whatever items they needed with them in to isolation. If you did not bring any items, that was a decision made by you. Unit team was notified of your placement in isolation. You were afforded the same treatment as other inmates placed in medical isolation.

You were in isolation May 29, 2020, to July 31, 2020. You tested negative on May 13, 2020. You then tested positive on May 29, 2020, and June 29, 2020.

Your blood pressure medication was filled at a 30 day supply each on June 1, 2020, June 29, 2020 and July 27, 2020.

Inmates were moved to different areas and treated for COVID-19 according the Regional Office and CDC recommendations.

Based on the above, this response is for informational purposes only.

If you are not satisfied with this decision, you may appeal to the Regional Director at Federal Bureau of Prisons, South Central Regional Office, 344 Marine Forces Drive, Grand Prairie, Texas, 75051. Your appeal must be received in the South Central Regional Office within 20 days of this response.

_DeWayne Hendrix_                                  _8/20/20_
DeWayne Hendrix                                    Date
Complex Warden

Exhibit 34

3

**FEDERAL CORRECTIONAL COMPLEX MEDIUM, FORREST CITY, AR**
**PART B-RESPONSE TO REQUEST FOR ADMINISTRATIVE REMEDY**
**(1033050-F2)**

This is in response to your Request for Administrative Remedy received on July 28, 2020, you state you received your blood pressure medication late and received a Bible a day late.

For relief, you request the Assistant Health Services Administrator be removed from any decisions over your care.

While being placed in isolation, you were allowed to bring your property. Inmates were given the option to take whatever items they needed with them in to isolation. If you did not bring any items, such as medications and a Bible, that was a decision made by you. Unit team was notified of your placement in isolation. You were afforded the same treatment as other inmates placed in medical isolation.

You were in isolation May 29, 2020 to July 31, 2020. You tested negative on May 13, 2020. You then tested positive on May 29, 2020 and June 29, 2020. Your movement history shows you were not in the Special Housing Unit as you state in your complaint.

Your blood pressure medication was filled at a 30 day supply each on June 1, 2020, June 29, 2020 and July 27, 2020.

Based on the above, this response is for informational purposes only.

If you are not satisfied with this decision, you may appeal to the Regional Director at Federal Bureau of Prisons, South Central Regional Office, 344 Marine Forces Drive, Grand Prairie, Texas, 75051. Your appeal must be received in the South Central Regional Office within 20 days of this response.

_____          _8/21/20_____
DeWayne Hendrix                          Date
Complex Warden

6

Exhibit 35

FEDERAL CORRECTIONAL COMPLEX MEDIUM, FORREST CITY, AR
PART B-RESPONSE TO REQUEST FOR ADMINISTRATIVE REMEDY
(1033043-F2)

This is in response to your Request for Administrative Remedy
received on July 29, 2020, which you state you were moved around
excessively due to testing positive for COVID-19.

For relief, you request the Bureau change its policy.

You tested negative for COVID-19 on May 13, 2020.  You then tested
positive on May 29, 2020 and June 29, 2020.  You were in isolation
May 29, 2020, to July 31, 2020.

While being placed in isolation, you were allowed to bring your
property.  Inmates were given the option to take whatever items they
needed with them in to isolation.  Unit team was notified of your
placement in isolation.  You were afforded the same treatment as
other inmates placed in medical isolation.

Inmates were moved to different areas according the Federal Bureau
of Prisons Regional Office and CDC recommendations.

Based on the above, this response is for informational purposes only.

If you are not satisfied with this decision, you may appeal to the
Regional Director at Federal Bureau of Prisons, South Central
Regional Office, 344 Marine Forces Drive, Grand Prairie, Texas,
75051.  Your appeal must be received in the South Central Regional
Office within 20 days of this response.

_____          8/20/20
DeWayne Hendrix                             Date
Complex Warden

Exhibit 3b

6

**FEDERAL CORRECTIONAL COMPLEX MEDIUM, FORREST CITY, AR**
**PART B-RESPONSE TO REQUEST FOR ADMINISTRATIVE REMEDY**
**(1033044-F2)**

This is in response to your Request for Administrative Remedy received on July 29, 2020, in which you state were moved to a spider infested cell that was wet with bug spray on July 29, 2020. For this reason according to this time frame, this BP-9 is denied due to not going through the appropriate process.

However, your mattress was damp due to being disinfected, not from bug spray. There is no sick call slip from you or any other record in your medical chart to reflect having a spider bite during this time.

If you are not satisfied with this decision, you may appeal to the Regional Director at Federal Bureau of Prisons, South Central Regional Office, 344 Marine Forces Drive, Grand Prairie, Texas, 75051. Your appeal must be received in the South Central Regional Office within 20 days of this response.

_DeWayne Hendrix_                     _8/20/20_

DeWayne Hendrix                      Date
Complex Warden

Exhibit 37

FEDERAL CORRECTIONAL COMPLEX MEDIUM, FORREST CITY, AR
PART B-RESPONSE TO REQUEST FOR ADMINISTRATIVE REMEDY
(1033040-F2)

This is in response to your Request for Administrative Remedy received on July 29, 2020, you state were punished for having COVID-19.

For relief, you request all inmates are treated the same.

While being placed in isolation, you were allowed to bring your property. Inmates were given the option to take whatever items they needed with them in to isolation. If you did not bring any items, that was a decision made by you. Unit team was notified of your placement in isolation. You were afforded the same treatment as other inmates placed in medical isolation.

You were in isolation May 29, 2020, to July 31, 2020. You tested negative on May 13, 2020. You then tested positive on May 29, 2020, and June 29, 2020.

Your blood pressure medication was filled at a 30 day supply each on June 1, 2020, June 29, 2020 and July 27, 2020.

Inmates were moved to different areas and treated for COVID-19 according the Regional Office and CDC recommendations.

Based on the above, this response is for informational purposes only.

If you are not satisfied with this decision, you may appeal to the Regional Director at Federal Bureau of Prisons, South Central Regional Office, 344 Marine Forces Drive, Grand Prairie, Texas, 75051. Your appeal must be received in the South Central Regional Office within 20 days of this response.

DeWayne Hendrix                           8/20/20
DeWayne Hendrix                           Date
Complex Warden

exhibit 38.

Attachment A

DOCUMENTATION OF INFORMAL RESOLUTION ATTEMPT

Bureau of Prisons Program Statement No. 1330.18, **Administrative Remedy Program**, January 6, 2014, requires, in most cases, that Inmates attempt informal resolution of grievances prior to filing a Formal written complaint. This form shall be used to document your efforts towards informally resolving your grievance.

Inmate's Name: Randal Jennings                     Date: 7-29-20

Register Number: 21384-045      Unit: Vojck

Specific Complaint (include date) and Requested Relief: I ~~see~~ to ~~us~~ "inform Am being punished locked in a 3 man cell because I am Sick, This is a denial of the 8th Amendment Cruel & Unusual Punishment. other inmates go to a Unit and have a TV, phone, mail mp3 players and other privileges

Efforts Made By Inmate to Informally Resolve Grievance (be specific): Talked to Poynor.

There are over 600 positive inmates why Are 5 Singled out?

Counselor's Comments: No response from appropriate Staff proceed w/ remedy process

Correctional Counselor's Review Date   7-7-20        Unit Manager's Review Date   7-7-20

exhibit 39

# _:UMENTATION OF INFORMAL RESOLUTION ATTEMPT   82

Bureau of Prisons Program Statement No. 1330.13, Administrative Remedy Program, (December 22, 1995), requires, in most cases, that inmates attempt informal resolution of grievances prior to filing a formal written complaint. This form shall be used to document your efforts towards informally resolving your grievance.

Inmate=s Name: Randal Jennings _____ Date: 7-29-20 ____

Register Number: 21384-045 _____ Unit: medical Isolation ____

Specific Complaint and Requested Relief: Mr Ponyor Told me to get what I needed. I forgot to get medicine out of my personal belongings. He refised me medications, then put other inmates Items & property on top of mine smashing all my property and mixing it with other Inmates. for no reason. this was retaliation as I had explained he was violating Amendment rights. I did not have a cup for water or clean clothes.

Efforts Made By Inmate to Informally Resolve Grievance (be specific): told Staff _____

I was denied medication and my bible. nor have I Seen a dr Thurs F S S monday 4 days, no teams no monitoring.

_____

_____

Counselor=s Comments: No response from appropriat staff. proceed w/ remedy process

_____

_____

_____

_____  7-7-20 ____     _____  7-7-20 ____
Correctional Counselor=s Review Date      Unit Manger=s Review Date

DATE BP-9 was ISSUED_____

exhibit 40

RANDAL G JENNINGS, 21384-045
FORREST CITY FCI      UNT: WYNNE U    QTR: W11-143L
P.O. BOX 7000
FORREST CITY,   AR 72336

**Administrative Remedy No. 1033050-A1**
**Part B - Response**

This is in response to your Central Office Administrative Remedy Appeal, wherein you allege staff misconduct. Specifically, you claim a staff member failed to retrieve your medications and a Bible from your property and provide you with these items after you were placed in medical isolation. For relief, you request the staff member be removed from providing supervision over your care.

We have reviewed documentation relevant to your appeal and, based on the information gathered, concur with the manner in which the Warden and Regional Director addressed your concerns at the time of your Request for Administrative Remedy and subsequent appeal. The Bureau of Prisons takes allegations of staff misconduct seriously. You were previously informed your complaint was forwarded to the appropriate component of the agency for review. No inmate is entitled to be apprised of the progress, outcome, or disposition of any review of alleged staff misconduct.

Accordingly, this response is for informational purposes only.

_4 | 5 · 21_
Date

_Ian Connors, Administrator_
National Inmate Appeals

U.S. Department of Justice

Federal Bureau of Prisons

**Central Office Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-229(13) and BP-230(13), including any attachments must be submitted with this appeal.

| From: | Jennings, Randal G | 21384-045 | WC | FOR |
|---|---|---|---|---|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A - REASON FOR APPEAL** I was housed in a positive unit (votec) with 19 others. We were tested for COVID on Monday. I was told that day 1 hr later to pack out. 4 others were too. I assumed I was negative and going back to a unit. Then I was told we were going to the medical isolation SHU. I tried to ask Mr. Poynor questions, but he just kept saying go to the back. He then told us to get what we needed for a **24-hr** stay. I was still shook up and only got food. After he closed the door I realized I didn't get my medication, Bible, shower shoes, book or clothes. When he passed again I politely asked him if I could get these things as they were in a hall next to the 3-man cell I was in. He said I told you to get what you needed. I told him I needed my medications. I have diabetes, high blood pressure, and other issues. Later a nurse showed up with some of the meds but not all. I was forced to go 24 hrs without meds until the scripts came from the pharmacy, eventhough the needed doses were locked in the room next to me. I believe this is negligence on Mr. Poynor's part as he knew or should have known missing medication destroys a person's health. I asked for a Bible. I went 24 hrs. before I got one. This could have been avoided if staff had a little compassion and not treat inmates like animals. I am not saying all medical staff do this, but Mr. Poynor sure leads some in that direction. Inmates should not be locked up like we were for 5 days.

| 1-8-21 | _Reval Ang_ |
|---|---|
| DATE | SIGNATURE OF REQUESTER |

**Part B - RESPONSE**

RECEIVED

JAN 2 6 2021

Administrative Remedy Section
Federal Bureau of Prisons

| DATE | GENERAL COUNSEL |
|---|---|
| ORIGINAL: RETURN TO INMATE | CASE NUMBER: _1033050 A1_ |

**Part C - RECEIPT**

CASE NUMBER: _____

Return to: _____

| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |
|---|---|---|---|---|

SUBJECT: _____

| DATE | SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL |
|---|---|

UPN LVN

PRINTED ON RECYCLED PAPER

BP-231(13)
JUNE 2002

exhibit 41

RANDAL G JENNINGS, 21384-045
FORREST CITY FCI     UNT: WYNNE U     QTR: W11-143L
P.O. BOX 7000
FORREST CITY,  AR 72336

**Administrative Remedy No. 1033049-A1**
**Part B - Response**

This is in response to your Central Office Administrative Remedy Appeal, wherein you allege staff misconduct. Specifically, you claim a staff member retaliated against you by damaging your personal property. For relief, you request the staff member be removed from providing supervision over your care.

We have reviewed documentation relevant to your appeal and, based on the information gathered, concur with the manner in which the Warden and Regional Director addressed your concerns at the time of your Request for Administrative Remedy and subsequent appeal. The Bureau of Prisons takes allegations of staff misconduct seriously. You were previously informed your complaint was forwarded to the appropriate component of the agency for review. No inmate is entitled to be apprised of the progress, outcome, or disposition of any review of alleged staff misconduct.

Accordingly, this response is for informational purposes only.

_____                    _____
Date                               Ian Connors, Administrator
                                   National Inmate Appeals

U.S. Department of Justice

Federal Bureau of Prisons

**Central Office Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-DIR-9 and BP-DIR-10, including any attachments must be submitted with this appeal.

From: __Jennings, Randal G__  __21384-045__  __WC__  __FOR__
  LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

**Part A—REASON FOR APPEAL** When the sick inmates were put in the medical SHU I had my property in a yellow cart. When I pointed out the facts that I did not have a cup or clothes and that I thought it was an amendment right violation to treat us differently than others who are sick with COVID, he put 5 other inmates' property on top of mine, smashing all my belongings and food. There was no reason for this other than retalliation. Staff should not retalliate. This is a senior staff member. They should treat inmates the same. I feel Mr. Poynor displays retalliatory behavior towards me because I requested items that should have been given to me. I request that Mr. Poynor be removed from being able to provide any type of supervision over my care.

This BP is solely about Mr. Poynor retalliating against me because I asked for things I should have been given.

I ask that Mr. Poynor be removed from being able to provide any supervision over my care.

__1-6-21__
  DATE

__Racdly__
  SIGNATURE OF REQUESTER

**Part B—RESPONSE**

RECEIVED

JAN 2 6 2021

Administrative Remedy Section
Federal Bureau of Prisons

_____    _____
    DATE                    GENERAL COUNSEL

ORIGINAL: RETURN TO INMATE    CASE NUMBER: __1033049-A1__

**Part C—RECEIPT**

CASE NUMBER: _____

Return to: _____
  LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

SUBJECT: _____

_____    _____
    DATE                    SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

USP LVN    ♲ Printed on Recycled Paper    BP-231(13)
    APRIL 1982

Exhibit 42

RANDAL G JENNINGS, 21384-045
FORREST CITY FCI    UNT: WYNNE U    QTR: W11-143L
P.O. BOX 7000
FORREST CITY,  AR 72336


received
1-7-2021

**U.S. Department of Justice**

Federal Bureau of Prisons

_Federal Correctional Complex_
_Forrest City, AR 72335_

September 8, 2020

MEMORANDUM FOR     To Whom it May Concern

FROM:        J. Cissell, Correctional Counselor

SUBJECT:     Administrative Remedy Delay Explanation

This memorandum is an explanation for the delay of response to Administrative Remedy # 1033046-F3. Inmate Jennings, Randal, Reg. No. 21384-045, approached me Correctional Counselor J. Cissell concerning his response. He stated his previous Counselor had advised him he would acquire copies of his original BP-8 complaints and write a memorandum of explanation once all copies were retrieved. Jennings stated he had yet to get those BP-8 copies or any memorandum. I consulted with the Unit Manager to provide the copies to the inmate on this date October 2, 2020. Please consider this explanation as reasoning for Jennings' failure to respond within the appropriated time period.

4

**U.S. DEPARTMENT OF JUSTICE**
Federal Bureau of Prisons

**REQUEST FOR ADMINISTRATIVE REMEDY**

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

| From: Jennings Randal G | 21384-045 | Votec | Forrest City Low |
|---|---|---|---|
| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A- INMATE REQUEST** While housed in the medical SHU we were treated like animals. There was absolutely no compassion or professionalism. We were denied things 1800 inmates get solely because we were sick. While other inmates got to continue to enjoy even though there sick but did not do the right thing and tell anyone. Among them was the right to mail someone (amendment violation) Phone (we got 1 call in a week and Mr Okane had to come to give us, that medical would not. We had no TV, MP3 player, access to the Court, or even books. Solely because we were sick and that was the convienent thing to do to us. We were not treated like people, the water was bad, the toilet green, and we were subjected to a negative pressure room which made it feel like there was no oxygen in the room. I asked to talk to a LT but I dont think medical even let them know. While we might not have a legal right to those mentioned things it is discrimination to treat inmates differently. This was a intentional infliction of emotional duress.

Also please note CDC says to social distance, yet there were 3 men in a 2 man cell. Inmates should be treated the same

| 7-8-20 | *Randal J* |
|---|---|
| DATE | SIGNATURE OF REQUESTER |

**Part B- RESPONSE**

RECEIVED
OCT 13 2020
BUREAU OF PRISONS
LEGAL DEPARTMENT, SCRO

RECEIVED
WR   DATE 7/14/20   8/4/20

| | |
|---|---|
| DATE | WARDEN OR REGIONAL DIRECTOR |

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

**ORIGINAL: RETURN TO INMATE**   CASE NUMBER: 1033046-F1 F3

CASE NUMBER: _____

**Part C- RECEIPT**

Return to: _____
| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

SUBJECT: _____

| DATE | RECIPIENT'S SIGNATURE (STAFF MEMBER) |
|---|---|



PRINTED ON RECYCLED PAPER

BP-229(13)
APRIL 1982

USP LVN

i4

Attachment A

## DOCUMENTATION OF INFORMAL RESOLUTION ATTEMPT

Bureau of Prisons Program Statement No. 1330.18, **Administrative Remedy Program**, January 6, 2014, requires, in most cases, that Inmates attempt informal resolution of grievances prior to filing a Formal written complaint. This form shall be used to document your efforts towards informally resolving your grievance.

Inmate's Name: _Randal Jennings_    Date: _7-28-20_

Register Number: _21384-045_    Unit: _Votek_

Specific Complaint (include date) and Requested Relief: _I would like a Written treatment plan and I would like all three Covid test Results. And all covid related records and any notes to CDC or anyone else._

Efforts Made By Inmate to Informally Resolve Grievance (be specific): _Asked Staff_

Counselor's Comments: _No response proceed w/ remedy process_

_W_    _7-7-20_      _MS_    _7-7-20_
Correctional Counselor's Review Date    Unit Manager's Review Date

**U.S. Department of Justice**

**Federal Bureau of Prisons**

**Regional Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

| From: | Jennings, Randal G | 21384-045 | WC | Forrest City Low |
|---|---|---|---|---|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A - REASON FOR APPEAL** While housed in the medical SHU we were treated ;like animals. There was absolutely no compassion or professionalism. We were denied things 1800 inmates get solely because we were sick. While other inmates got to continue to enjoy eventhough they were sick but did not do the right thing and tell anyone. Among them was the right to mail someone (amendment violation), phone (we got 1 call in a week and Mr. O'Kane had to come to give us that. Medical would not.) We had no TV, MP3 player, access to the court, or even books. Solely because we were sick and that was the convenient thing to do to us. We were not treated like people, the water was bad, the toilet green, and we were subject to a negative pressure room which made it feel like there was no oxygen in the room. I asked to talk to a LT but don't think medical let them know. While we might not have a legal right to those mentioned things, it is discrimination to treat inmates differently. This was an intentional infliction of emotional duress. Also, please note CDC says to social distance, yet there were 3 men in a 2-man cell. Inmates should be treated the same. The cell I was in was a 2-man with a portable bed in it. There is not enough floor space for 2 men yet they forced 3 into a cell not big enough for 2. Also notice, the staff do not deny green toilets, no hot water, no oxygen in the negative pressure room. There is nor enough floor space in the medical cells to house 3 men.

| 10-2-20 | | |
|---|---|---|
| DATE | Reed Jr | SIGNATURE OF REQUESTER |

**Part B - RESPONSE**

RECEIVED

OCT 13 2020

BUREAU OF PRISONS
LEGAL DEPARTMENT, SCRO

| DATE | REGIONAL DIRECTOR |
|---|---|

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE                    CASE NUMBER: _1033046-R1_

**Part C - RECEIPT**

CASE NUMBER: _____

Return to: _____

| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |
|---|---|---|---|---|

SUBJECT:_____

| DATE | | SIGNATURE, RECIPIENT OF REGIONAL APPEAL |
|---|---|---|

USP LVN            PRINTED ON RECYCLED PAPER

BP-230(13)
JUNE 2002

U.S. Department of Justice

Federal Bureau of Prisons

**Regional Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: Jennings, Randal G          21384-045          WC          Forrest City Low
      LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.          UNIT          INSTITUTION

**Part A - REASON FOR APPEAL** While housed in the medical SHU we were treated like animals. There was absolutely no compassion or professionalism. We were denied things 1800 inmates get solely because we were sick. While other inmates got to continue to enjoy, eventhough they were sick but did not do the right thing and tell anyone. Among them was the right to mail someone (amendment violation), phone (we got 1 call in a week and Mr. O'Kane had to come to give us that. Medical would not.) We had no TV, MP3 player, access to the court, or even books. Solely because we were sick and that was the convenient thing to do to us. We were not treated like people, the water was bad, the toilet green, and we were subject to a negative pressure room which made it feel like there was no oxygen in the room. I asked to talk to a LT but don't think medical let them know. While we might not have a legal right to those mentioned things, it is discrimination to treat inmates differently. This was an intentional infliction of emotional duress. Also, please note CDC says to social distance yet there were 3 men in a 2-man cell. Inmates should be treated the same. The cell I was in was a 2-man with a portable bed in it. There is not enough floor space for 2 men yet they forced 3 into a cell not big enough for 2. Also notice, the staff do not deny green toilets, no hot water, no oxygen in the negative pressure room. There is not enough floor space in the medical cells to house 3 men.

10-2-20          DATE          SIGNATURE OF REQUESTER

**Part B - RESPONSE**

DATE          REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

SECOND COPY: RETURN TO INMATE          CASE NUMBER: 1023096-R1

**Part C - RECEIPT**

CASE NUMBER _____

Return to: _____
           LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION

SUBJECT: _____

DATE          SIGNATURE, RECIPIENT OF REGIONAL APPEAL

BP-230(13)
JUNE 2002

UPN LVN

U.S. Department of Justice                                    **Central Office Administrative Remedy Appeal**

Federal Bureau of Prisons

---

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-229(13) and BP-230(13), including any attachments must be submitted with this appeal.

From: _Jennings, Randal G_____    _21384-045_____    _WC_____    _FOR_____
      LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

**Part A - REASON FOR APPEAL**

Mr. Poynor intentionally denied me clean clothes, shampoo, a Bible, and needed medications. This was a violation of Constitutional rights to religion and medical care that had been approved by a MD, as needed every day. He then left the light on 24 hours and no hot water and spider infested one man cube with 3 people in it. This was intentional infliction of emotional duress, a violation of cruel and unusaul punishment, 8th Amendment. See BP 10 & 9 for more information.

_1-7-21_____
    DATE

_Randal J_____ (signature)
SIGNATURE OF REQUESTER

**Part B - RESPONSE**

RECEIVED

JAN 2 6 2021

Administrative Remedy Section
Federal Bureau of Prisons

---

_____    _____
    DATE          GENERAL COUNSEL

ORIGINAL: RETURN TO INMATE    CASE NUMBER: _103304____

**Part C - RECEIPT**

    CASE NUMBER: _____

Return to: _____
    LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION
SUBJECT: _____

_____    _____
    DATE          SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

UPN LVN    PRINTED ON RECYCLED PAPER    BP-231(13)
    JUNE 2002

U.S. Department of Justice

Federal Bureau of Prisons

**Central Office Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-229(13) and BP-230(13), including any attachments must be submitted with this appeal.

| From: | Jennings, Randal G | 21384-045 | WC | FOR |
|---|---|---|---|---|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A - REASON FOR APPEAL**

Mr. Poynor intentionally denied me clean clothes, shampoo, a Bible, and needed medications. This was a violation of Constitutional rights to religion and medical care that had been approved by a MD, as needed every day. He then left the light on 24 hours and no hot water and spider infested one man cube with 3 people in it. This was intentional infliction of emotional duress, a violation of cruel and unusaul punishment, 8th Amendment. See BP 10 & 9 for more information.,

1-7-21

_____
DATE

_____
SIGNATURE OF REQUESTER

**Part B - RESPONSE**

RECEIVED
JAN 2 6 2021
Administrative Remedy Section
Federal Bureau of Prisons

_____
DATE

GENERAL COUNSEL

FIRST COPY: WASHINGTON FILE COPY

CASE NUMBER: 1033044 C

**Part C - RECEIPT**

CASE NUMBER: _____

Return to: _____

| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |
|---|---|---|---|

SUBJECT: _____

_____
DATE

_____
SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

UPN LVN

BP-231(13)
JUNE 2002

Federal Bureau of Prisons

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-229(13) and BP-230(13), including any attachments must be submitted with this appeal.

From: **Jennings, Randal G**          **21384-045**          **WC**          **FOR**

LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION

**Part A - REASON FOR APPEAL**

Mr. Poynor intentionally denied me clean clothes, shampoo, a Bible, and needed medications. This was a violation of Constitutional rights to religion and medical care that had been approved by a MD, as needed every day. He then left the light on 24 hours and no hot water and spider infested one man cube with 3 people in it. This was intentional infliction of emotional duress, a violation of cruel and unusaul punishment, 8th Amendment. See BP 10 & 9 for more information.,

1-7-21
_____          _____
DATE          SIGNATURE OF REQUESTER

**Part B - RESPONSE**


_____          _____
DATE          GENERAL COUNSEL

SECOND COPY: REGIONAL FILE COPY          CASE NUMBER: _____

**Part C - RECEIPT**

          CASE NUMBER: _____

Return to: _____
          LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION

SUBJECT: _____

_____          _____
DATE          SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

UPN LVN          BP-231(13)
          JUNE 2002

U.S. Department of Justice

Federal Bureau of Prisons

**Central Office Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-229(13) and BP-230(13), including any attachments must be submitted with this appeal.

| From: | Jennings, Randal G | 21384-045 | WC | FOR |
|---|---|---|---|---|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A - REASON FOR APPEAL**

Mr. Poynor intentionally denied me clean clothes, shampoo, a Bible, and needed medications. This was a violation of Constitutional rights to religion and medical care that had been approved by a MD, as needed every day. He then left the light on 24 hours and no hot water and spider infested one man cube with 3 people in it. This was intentional infliction of emotional duress, a violation of cruel and unusaul punishment, 8th Amendment. See BP 10 & 9 for more information.

1-2-21

DATE

SIGNATURE OF REQUESTER

**Part B - RESPONSE**

DATE

GENERAL COUNSEL

THIRD COPY: WARDEN'S ADMINISTRATIVE REMEDY FILE

CASE NUMBER: _____

**Part C - RECEIPT**

CASE NUMBER: _____

Return to: _____

LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION

SUBJECT: _____

DATE

SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

UPN LVN

BP-231(13)
JUNE 2002

Regional Administrative Remedy Appeal No. 1033046-R1
Part B - Response

This is in response to your Regional Administrative Remedy
Appeal receipted on October 13, 2020.  You allege you were
punished and treated differently from other inmates when you
were placed in medical isolation after contracting COVID-19.
Specifically, you claim you were moved to a negative pressure
room in unpleasant and crowded conditions and you were afforded
less property and fewer privileges than are normally afforded to
inmates in the general population.

The Bureau of Prisons (BOP) is continually monitoring the
COVID-19 virus and taking steps to mitigate spread·risk using
guidance and recommendations of multiple sources, including, but
not limited to, the World Health Organization, the Centers for
Disease Control, the Office of Personnel Management, the
Department of Justice, and the Office of the Vice President.
The situation is continually assessed and mitigation measures,
including isolation of infected inmates, are continually updated
to best ensure the safety of inmates, staff, and the public.
Based on factors such as the number of isolated inmates, the
location of isolation spaces, and institution safety and
security needs, the conditions of confinement and authorized
property and privileges of inmates in isolation may differ from
inmates in the general population.  Any such differences are for
short durations and are incidental consequences of isolation,
not a form of punishment or discrimination.

This response is for informational purposes only.

If you are dissatisfied with this response, you may appeal to
the Federal Bureau of Prisons, Office of General Counsel,
320 First Street, N.W., Washington, D.C. 20534.  Your appeal
must be received in the Office of General Counsel within 30 days
from the date of this response.


DEC 1 1 2020
_____
Date

_____
J. Baltazar
Regional Director

Regional Administrative Remedy Appeal No. 1033046-R1
Part B - Response

This is in response to your Regional Administrative Remedy
Appeal receipted on October 13, 2020.  You allege you were
punished and treated differently from other inmates when you
were placed in medical isolation after contracting COVID-19.
Specifically, you claim you were moved to a negative pressure
room in unpleasant and crowded conditions and you were afforded
less property and fewer privileges than are normally afforded to
inmates in the general population.

The Bureau of Prisons (BOP) is continually monitoring the
COVID-19 virus and taking steps to mitigate spread risk using
guidance and recommendations of multiple sources, including, but
not limited to, the World Health Organization, the Centers for
Disease Control, the Office of Personnel Management, the
Department of Justice, and the Office of the Vice President.
The situation is continually assessed and mitigation measures,
including isolation of infected inmates, are continually updated
to best ensure the safety of inmates, staff, and the public.
Based on factors such as the number of isolated inmates, the
location of isolation spaces, and institution safety and
security needs, the conditions of confinement and authorized
property and privileges of inmates in isolation may differ from
inmates in the general population.  Any such differences are for
short durations and are incidental consequences of isolation,
not a form of punishment or discrimination.

This response is for informational purposes only.

If you are dissatisfied with this response, you may appeal to
the Federal Bureau of Prisons, Office of General Counsel,
320 First Street, N.W., Washington, D.C. 20534.  Your appeal
must be received in the Office of General Counsel within 30 days
from the date of this response.

DEC 1 1 2020
_____
Date

_____
J. Baltazar
Regional Director

Exhibit 45

RANDAL G JENNINGS, 21384-045
FORREST CITY FCI     UNT: WYNNE U     QTR: W11-143L
P.O. BOX 7000
FORREST CITY,  AR 72336

**FEDERAL CORRECTIONAL COMPLEX MEDIUM, FORREST CITY, AR
PART B-RESPONSE TO REQUEST FOR ADMINISTRATIVE REMEDY
(1034663-F1)**

This is in response to your Request for Administrative Remedy received on July 22, 2020, in which you request medical treatment for COVID-19.

For relief, you request medical treatment for COVID-19, to include: Breathing treatments and medical records.

A review of your medical record shows you were included in mass COVID-19 testing on May 12, 2020.  You were asymptomatic and your test results were negative.

On May 28, 2020, you submitted a sick call regarding an earache.  You were assessed by the physician assistant who ordered a COVID-19 test and prescribed antibiotic ear drops.  Your COVID-19 test results came back as positive on May 29, 2020.  You were put in isolation.

From June 4, to June 25, 2020, you had daily screenings and reported symptoms as cough and sinus congestion.  Your temperature checks during this time showed no fever.  Your saturated oxygen was between 96 and 98 percent, which is in the normal range.

You were seen by the doctor and prescribed an antibiotic, Amoxicillin 500 mg, on June 4, 2020, three times a day for seven days, for a sinus infection.  The doctor added prednisone on June 11, 2020, since you were still having sinus inflammation.

Your albuterol inhaler was refilled on June 29, 2020, for your history of asthma.

On June 30, 2020, a chest X-ray was performed, showing a stable 8 mm calcified granuloma in the left lung.  This result was reviewed by the physician on June 30, 2020.  A previous X-ray on August 30, 2017, showed the same impression.

On July 6, 2020, you put in a sick call for urinary issues with no mention of needing a breathing treatment.  You did not mention breathing issues.

You were seen by the doctor on July 8, 2020, for complaint of cough. You were advised to increase fluids.

On July 9, 2020, you submitted a sick call to the nurse regarding urinary complaints. The doctor saw you on July 9, 2020, for this issue and prescribed an antibiotic, Sulfamethoxazole/Trimeth 800mg /160mg tab. You did not request a breathing treatment during this visit.

On July 13, 2020, you were seen and treated in medical by the nurse due to a cut on your hand, without mention of breathing issues.

On July 16, 20, and 21, 2020, you were seen for urinary issues and prescribed Sulfamethoxazole/Trimeth 800mg /160mg tab on July 16, 2020. You did not mention respiratory issues during these visits.

There are no pending sick calls on file for you regarding breathing issues nor is there a cop out on file requesting medical records. Please submit a sick call slip for medical issues you may be experiencing and place a cop out to medical records to obtain your records.

No medicines are yet available to prevent or cure the coronavirus.

Based on the above, this request is for informational purposes.

If you are not satisfied with this decision, you may appeal to the Regional Director at Federal Bureau of Prisons, South Central Regional Office, 344 Marine Forces Drive, Grand Prairie, Texas, 75051. Your appeal must be received in the South Central Regional Office within 20 days of this response.

_____        _____8/10/2020_____
DeWayne Hendrix                        Date
Complex Warden

U.S. DEPARTMENT OF JUSTICE

Federal Bureau of Prisons

**REQUEST FOR ADMINISTRATIVE REMEDY**

Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.

| From: | Jennings Randal G. | 21384-045 | Votec | Forrest City Low |
|-------|-------------------|-----------|-------|------------------|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A- INMATE REQUEST** I have had Covid 19 for over 6 weeks now. Every time I ask for a treatment plan I get spun. It took weeks to get a xray, and I never did get a breathing treatment. So I asked for a written treatment plan, My test results, all my Covid related treatment records, and I was told I was on a CDC watch list so I requested any notes on me they or any group might see. I have a extensive history of lung infections and some of the issues I am having could be that but a test told me I was still Covid positive so it might be from that. I need a treatment plan as I know hospitals are doing breathing treatments and other things to help paitents. I do understand this is a viris but it might also be a bacterial infection yet there were no cultures taken of the sputem. So I would like to know my care plan. Yet even when I wrote a BP8 it was ignored. I thought policy stated they should try to resolve issues and BPs not ignore them.

_____7-8-20_____          _____Randal Jo___P_____
DATE                                          SIGNATURE OF REQUESTER

**Part B- RESPONSE**

RECEIVED

BY _UL_   DATE _7/22/20_

_____                                    _____
DATE                                                        WARDEN OR REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE          CASE NUMBER: _1034663-F1_

                                                          CASE NUMBER: _____

**Part C- RECEIPT**

Return to: _____
              LAST NAME, FIRST, MIDDLE INITIAL         REG. NO.          UNIT          INSTITUTION

SUBJECT: _____

_____          ♲          _____
DATE              PRINTED ON RECYCLED PAPER       RECIPIENT'S SIGNATURE (STAFF MEMBER)

USP LVN                                                                                      BP–229(13)
                                                                                                APRIL 1982

U.S. DEPARTMENT OF JUSTICE

Federal Bureau of Prisons

**REQUEST FOR ADMINISTRATIVE REMEDY**

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

| From: Jennings Randal G | 21384-045 | Votec | Forrest City Low |
|---|---|---|---|
| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A- INMATE REQUEST** I have had Covid 19 for over 6 weeks now.Every time I ask for a treatment plan I get spun.It took weeks to get a xray, and I never did get a breathing treatment. So I asked for a written treatment plan, My test results, all my Covid related treatment records, and I was told I was on a CDC watch list so I requested any notes on me they or any group might see.I have a extensive history of lung infections and some of the issues I am having could be that but a test told me I was still Covid positive so it might be from that. I need a treatment plan as I know hospitals are doing breathing treatments and other things to help patients.I do understand this is a viris but it might also be a bacterial infection yet there were no cultures taked of the sputem. So I would like to know my care plan. Yet even when I wrote a BP8 it was ignored. I thought policy stated they should try to resolve issues and BPs not ignore them.

| 7-8-20 | Randal Jennings |
|---|---|
| DATE | SIGNATURE OF REQUESTER |

**Part B- RESPONSE**

RECEIVED

BY | DATE

UR | 7/22/20

DATE

WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

**SECOND COPY: RETURN TO INMATE**

CASE NUMBER: 1034663-F1

CASE NUMBER: _____

**Part C- RECEIPT**

Return to: _____

| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |
|---|---|---|---|

SUBJECT: _____

| DATE | RECIPIENT'S SIGNATURE (STAFF MEMBER) | BP-229(13) |
|---|---|---|
| | | APRIL 1982 |

USP LVN    PRINTED ON RECYCLED PAPER

U.S. DEPARTMENT OF JUSTICE

Federal Bureau of Prisons

**REQUEST FOR ADMINISTRATIVE REMEDY**

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

| From: | Jennings Randal G | 21384-045 | Votec | Forrest City Low |
|-------|-------------------|-----------|-------|------------------|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A- INMATE REQUEST** I have had Covid-19 for over 6 weeks now. Everyt time I ask for a treatment plan I get spun. It took weeks to get a xray, and I never did get a breathing treatment. So I asked for a written treatment plan, My test results, all my Covid related treatment records, and I was told I was on a CDC watch list so I requested any notes on me they or any group might see. I have a extensive history of lung infections and some of the issues I am having could be that but a test told me I was still Covid positive so it might be from that. I need a treatment plan as I know hospitals are doing breathing treatments and other things to help paitents. I do understand this is a viris but it might also be a bacterial infection yet there were no cultures taked of the sputem. So I would like to know my care plan. Yet even when I wrote a BP8 it was ignored. I thought policy stated they should try to resolve issues and BPs not ignore them.

| 7-20 | |
|------|------|
| DATE | SIGNATURE OF REQUESTER |

**Part B- RESPONSE**

RECEIVED

| DATE 7/22/20 | |
|--------------|------|
| DATE | WARDEN OR REGIONAL DIRECTOR |

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

**THIRD COPY: RETURN TO INMATE**

CASE NUMBER: 10-466-F1

CASE NUMBER: _____

**Part C- RECEIPT**

Return to: _____

| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |
|--|----------------------------------|----------|------|-------------|

SUBJECT: _____

| | |
|--|------|
| DATE | RECIPIENT'S SIGNATURE (STAFF MEMBER) |

USP LVN    PRINTED ON RECYCLED PAPER    BP-229(13)
APRIL 1982

EXHIBIT 44

2

FEDERAL CORRECTIONAL COMPLEX MEDIUM, FORREST CITY, AR
PART B-RESPONSE TO REQUEST FOR ADMINISTRATIVE REMEDY
(1033051-F2)

This is in response to your Request for Administrative Remedy
received on July 28, 2020, in which you state you were subjected to
COVID-19 due to the Bureau of Prisons allowing a bus of new inmates
on the compound after being in quarantine for 24 hours.

For relief, you request policy to be followed.

Inmates were moved to different areas according the Federal Bureau
of Prisons Regional Office and CDC recommendations.  All quarantine
inmates, to include new intakes, spent a minimum of 14 days in
quarantine at this institution.

Based on the above, this response is for informational purposes only.

If you are not satisfied with this decision, you may appeal to the
Regional Director at Federal Bureau of Prisons, South Central
Regional Office, 344 Marine Forces Drive, Grand Prairie, Texas,
75051.  Your appeal must be received in the South Central Regional
Office within 20 days of this response.

_DeWayne Hendrix_                          _8/20/20_
DeWayne Hendrix                            Date
Complex Warden

Exhibit 45.

2

Attachment A

## DOCUMENTATION OF INFORMAL RESOLUTION ATTEMPT

Bureau of Prisons Program Statement No. 1330.18, Administrative Remedy Program, January 6, 2014, requires, in most cases, that Inmates attempt informal resolution of grievances prior to filing a Formal written complaint. This form shall be used to document your efforts towards informally resolving your grievance.

Inmate's Name: Randal Jennings     Date: _____

Register Number: 21384 045     Unit: V7 TCK.

Specific Complaint (include date) and Requested Relief: STAFF was negligent for allowing a bus into general population without the 14 day wait. Causing me to get Covid-19.

Efforts Made By Inmate to Informally Resolve Grievance (be specific): Talked to staff

Counselor's Comments: No response proceed w/ remedy process

PJ        7-7-20            MC        7-7-20
Correctional Counselor's Review Date        Unit Manager's Review Date

# Bureau of Prisons
# Health Services
# Clinical Encounter

| | | | | |
|---|---|---|---|---|
| Inmate Name: JENNINGS, RANDAL G | | | | Reg #: 21384-045 |
| Date of Birth: 10/24/1966 | | Sex: M  Race: WHITE | | Facility: FOR |
| Encounter Date: 07/13/2020 07:44 | | Provider: Ward, Kevin RN | | Unit: K01 |

Injury Assessment - Work-related encounter performed at Health Services.

**SUBJECTIVE:**

   **INJURY  1**    **Provider:**  Ward, Kevin RN

      **Date of Injury:**  07/13/2020 07:15    **Date Reported for Treatment:**  07/13/2020 07:43

      **Work Related:**  Yes    **Work Assignment:**  FPI MILL 3

      **Pain Location:**  Finger(s)-Left

      Pain Scale:  4

      Pain Qualities:  Aching

      **Where Did Injury Happen (Be specific as to location):**

         votec

      **Cause of Injury (Inmate's Statement of how injury occurred):**

         moving cots for officer request and cot folded and cut left pinky finger

      **Symptoms (as reported by inmate):**

         cut to left pinky finger

**OBJECTIVE:**

**Temperature:**

| Date | Time | Fahrenheit | Celsius | Location | Provider |
|---|---|---|---|---|---|
| 07/13/2020 | 07:45 FOX | 98.5 | 36.9 | Oral | Ward, Kevin RN |

**Pulse:**

| Date | Time | Rate Per Minute | Location | Rhythm | Provider |
|---|---|---|---|---|---|
| 07/13/2020 | 07:45 FOX | 87 | Radial | Regular | Ward, Kevin RN |

**Respirations:**

| Date | Time | Rate Per Minute | Provider |
|---|---|---|---|
| 07/13/2020 | 07:45 FOX | 18 | Ward, Kevin RN |

**Blood Pressure:**

| Date | Time | Value | Location | Position | Cuff Size | Provider |
|---|---|---|---|---|---|---|
| 07/13/2020 | 07:45 FOX | 126/84 | Right Arm | Sitting | Adult-large | Ward, Kevin RN |

**SaO2:**

| Date | Time | Value(%) | Air | Provider |
|---|---|---|---|---|
| 07/13/2020 | 07:45 FOX | 96 | Room Air | Ward, Kevin RN |

**ASSESSMENT:**

   Cut(s) and/or Abrasion(s)

   Inmate called to medical for left pinky finger cut. Inmate received AAOX3, ambulatory. Evaluation reveals horseshoe shaped 1.5cm laceration to distal plantar left lateral finger. No DROM to left small finger, capillary refill < 3 seconds. Cleaned with wound cleaner and Betadine swab, scant blood at present. MD on site and orders for Dermabond and tetanus injection. Follow up wound care as needed. Inmate tolerated well, inmate already has IBU on hand for pain issues.

RMLY TO SEAL

 

FSC
MIX
Board
FSC® C118916

PAPER
POUCH
How2recycle.info

 

UNITED STATES
POSTAL SERVICE®

U.S. POSTAGE PAID
PM 2-Day
FORREST CITY, AR
72335
MAR 16, 22
AMOUNT

1006          72201          $0.00

R2305E125361-88



**UNITED STATES**      **PRIORITY**®

**MAIL**

FOREVER / USA     FOREVER / USA     FOREVER / USA

  

...tions apply).*

...estinations.

FOREVER / USA     FOREVER / USA     FOREVER / USA

ternational insuranc...**



...uired.

 

...s see the

 

...na...manual at http://pe.usps.com... a...   ...tions of coverage.

  

■ ANY WEIGHT

FROM: Randal Jennings  21384045
Name
Federal Correction Complex low
P.o box 9000
Box or Street Address
Forrest City   AR.  72336
City, State and ZIP Code

TO:                          ___ _____ Court Clerk

Postage Stamps
Here

:KED ■ INSURED



...TED DELIVERY DAY: 03/21/22

...SPS TRACKING® #

To schedule free Package Pickup,
scan the QR code.



USPS.COM/PICKUP

TO: United States District Court Clerk.

600 West Capitol Ave. Suite A-149.
                                    72210
Little Rock Arkansas  72110 - 3325

**72201**

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® and Priority Mail International® shipments. Misuses may be a violation of federal law. This package is not for resale. EP14F © U.S. Postal Service; May 2020; All rights reserved.